# FIRST DISTRICT, NOVEMBER, 1897.

### SAM C. AND ANNA W. VINEYARD, GUARDIANS, ETC., V. JOHN M. BRUNDRETT.

#### Delivered November 4, 1897.

**1. Adverse Possession—Inclosure.**

An inclosure of land by natural barriers, such as the shore of a bay, or by fences built to inclose adjoining land, with nothing to indicate that they are being used to inclose the former land, and the grazing of cattle on such land, do not constitute such possession as will support the bar of five years limitation.

**2. Same.**

The grazing of cattle on land is not such adverse use as will support the statute of limitation.

**3. Trespass to Try Title—After-Acquired Title.**

A deed conveying the legal title to the land in suit to plaintiff in an action of trespass to try title, is admissible in evidence, although executed after the commencement of the action, where she was the equitable owner at the beginning of the suit.

**4. Practice in Trial Court—Trespass to Try Title.**

Exclusion from evidence of a deed under which defendant in trespass to try title might have prescribed, is not prejudicial to him, where that purpose was served by another deed which was admitted in evidence.

APPEAL from Aransas.   Tried below before Hon. M. F. LOWE.

*Ward & James,* for appellants.—1. For possession of land to be adverse, it must amount to a disseizin of the true owner, and must be visible, open, adverse, notorious, exclusive, distinct, and hostile. Wheeler v. Moody, 9 Texas, 375; Gillispie v. Jones, 26 Texas, 346; Peyton v. Barton, 53 Texas, 303; Parker v. Baines, 65 Texas, 609; Bracken v. Jones, 63 Texas, 186; Satterwhite v. Rosser, 61 Texas, 170; Ward v. Drouthett, 44 Texas, 370; Brumogin v. Bradshaw, 39 Cal., 25; Doolittle v. Tice, 41 Barb. (N. Y.), 183; Webb on Rec. of Title, secs. 228, 234.

2. The grazing and pasturing of cattle and horses on a tract of land is not such adverse possession as will support the statute of limitation. Fuentes v. McDonald, 85 Texas, 136; Sellman v. Hardin, 58 Texas, 86; Whitehead v. Foley, 28 Texas, 291; Webb on Rec. of Title, sec. 233.

3. A tract of land owned by any person entirely surrounded by tracts claimed or fenced by another, shall not be considered inclosed by a fence inclosing the circumscribing tracts or any part thereof. Towrey v. Henderson, 60 Texas, 297; Rev. Stats., art. 3345.

*Glass, Callender & Carsner,* for appellee.—The fact that the land specially claimed by appellee was inclosed by fences, built by claimants of adjoining lands, and the shores of the bays with which said fences con-

nected, will not prevent the possession of appellee from being exclusive; the character, situation, and adaptability of the land to a specific use, in connection with the use made of it by appellee, shows the holding and use of said land by appellee to be visible, open, adverse, and exclusive to the appellants. Richards v. Smith, 67 Texas, 612; Parker v. Newberry, 83 Texas, 428; Green v. Boon, 37 S. W. Rep., 187; Webb on Rec. of Title, sec. 233.

GARRETT, CHIEF JUSTICE.—This was an action of trespass to try title brought in the District Court of Aransas County on the 10th day of March, 1894, by Samuel C. and his wife Anna W. Vineyard, as the guardians of their minor daughter, Lillian Vineyard, against John M. Brundrett for the recovery of certain lands described in the petition. The case has been before this court on a former appeal, 35 Southwestern Reporter, 1084, and before the Supreme Court on writ of error to this court. 36 S. W. Rep., 424. The former appeal turned on the validity of a deed for the property in controversy from Samuel C. Vineyard to his minor son, Samuel Harvey Vineyard, which the Supreme Court finally held good. The controlling question on this appeal is whether or not the right of the plaintiffs to recover the land in controversy is barred by the statute of five years limitation.

The lands sued for form a body of about 13,000 acres, composed of seven tracts situated in Aransas County, upon a peninsula, and is known as the "Lamar property." On February 12, 1850, James W. Byrne owned the entire property. Afterwards he sold and conveyed to various parties different undivided interests in the property, and at his death, in 1862, owned only an undivided interest therein of about one-fourth in fee simple, and an equity for unpaid purchase money to about the same amount which had been conveyed to Samuel Colt. The facts with regard to the creation of this equity are as follows:

1. James W. Byrne conveyed to W. G. Hale and Ebenezer Allen an undivided one-half interest in the land by deed dated February 12, 1850.

2. James W. Byrne conveyed to Samuel Colt and J. B. Colt, jointly, an undivided one-twenty-fourth interest in the land, less 200 acres, by deed dated April 21, 1856.

3. W. G. Hale and Ebenezer Allen conveyed to Samuel Colt and J. B. Colt an undivided one-eighth part of the land, less 200 acres, by deed dated April 22, 1856.

4. On May 24, 1858, the interest of J. B. Colt, which was an undivided one-twelfth, was vested back in Byrne, Hale, and Allen jointly.

5. On January 30, 1858, James W. Byrne, Ebenezer Allen, and William G. Hale conveyed to Samuel Colt one-twelfth of the land, less 200 acres.

6. On April 2, 1861, James W. Byrne conveyed to Samuel Colt an undivided three-sixteenths of the land, less 200 acres.

7. On April 2, 1861, William G. Hale and Ebenezer Allen conveyed to Samuel Colt an undivided three-sixteenths of the land.

8. The deeds conveying the several interests to Samuel Colt all acknowledged receipt of the purchase money.

The heirs and legal representatives of Samuel Colt, by a deed dated August 8, 1870, and recorded June 30, 1876, for a recited "consideration of a balance of all further demands against the estate and legal representatives and heirs of Samuel Colt, deceased, duly made and executed by William George Hale, Sylvia J. Allen, and Anna William Vineyard and her husband, S. C. Vineyard," remised, released, and quitclaimed "unto said William George Hale, Sylvia J. Allen, and Anna William Vineyard all the right, title, and claim and interest whatever," had by them as heirs or devisees of Samuel Colt or otherwise "in and to the following described parcel of land, to wit: A tract of land composed of various smaller tracts in the county of Refugio and State of Texas, at and on a peninsula called Lamar, embracing all the land in said peninsula as the same is bounded by Aransas Bay, Copano Bay, and St. Charles Bay, and extending back or north to a line running from Copano Bay to Covaso Creek, and forming the western boundary line of surveys on land scrip numbered 1387-1486 and 22, and also including the flats, shoals, and islands in front of said peninsula, according to the several deeds of conveyance, and the mortgage deed made to said Samuel Colt by W. G. Hale and Ebenezer Allen and J. W. Byrne, now deceased, with full release and acquittance of the debt expressed in the deed therefor.

"To have and to hold all and singular the said premises, together with all and singular the hereditaments and appurtenances to the same belonging, unto the said William G. Hale, Sylvia J. Allen, and Anna W. Vineyard, their heirs and assigns forever, as tenants in common, the said Hale and Allen having each one-fourth undivided interest, and said Anna W. Vineyard having one-half thereof."

Anna W. Vineyard was the granddaughter and sole legatee and devisee of James W. Byrne. She signed an agreement compromising a claim in favor of James W. Byrne, Ebenezer Allen, and William G. Hale against the estate of Samuel Colt, deceased, and the deed from them was executed in consideration thereof. The estate of Samuel Colt was never indebted to her. She never saw the deed. It was never delivered to her. She supposed it was executed to her because she was sole legatee and devisee under the will of her grandfather.

The estate of James W. Byrne was indebted. J. W. Vineyard was appointed administrator in 1863. In accordance with regular orders and proceedings in the probate court the "Colt claim" was sold by the administrator, described as follows: "Three-eighths interest in a claim for property in Lamar sold Samuel Colt, now deceased, and not paid for, which interest amounts to about $2531\frac{1}{4}$ acres of land, more or less, or the corresponding price to be paid for the same, say $6750 in the hands of W. G. Hale for settlement." Samuel C. Vineyard became the purchaser at administrator's sale of the entire interest of James W. Byrne in the Lamar property, including the Colt claim. He conveyed all he purchased to Samuel Harvey Vineyard on October 8, 1873, by the deed

which was held valid by the Supreme Court on former appeal. This deed was duly recorded on the date of its execution. After the latter became of age, he conveyed to his sister, Lillian W. Vineyard, plaintiff's ward, on November 23, 1888. After this suit was filed, on to wit, August 6, 1896, Anna W. Vineyard, joined by her husband, S. C. Vineyard, conveyed the legal title to the Colt interest vested in her to Lillian Vineyard. Two other conveyances of an undivided one twenty-fourth interest in the land, less 200 acres each, were made by James W. Byrne in his lifetime; one to Erastus Williams on April 26, 1856, and the other to R. B. Marcy on April 2, 1856. By the several conveyances it appears that the minor Lillian Vineyard became invested with eleven twenty-fourths of the land sued for, unless it be that the interest was a little large in the 200 acres excepted from some of the conveyances, but appellants in their brief have claimed the interest to be as stated, and it is so found.

After the conveyance by Samuel C. Vineyard, Fanny Hale, for herself and as natural guardian of the minor heirs of W. G. Hale, deceased, brought a suit in the District Court of Aransas County against Samuel C. Vineyard, Anna W. Vineyard, and others for the partition of the Lamar property. No notice was taken in the suit of Samuel Harvey Vineyard, in whom the title of Sam C. Vineyard was then vested, and he was not in any manner made a party thereto. A partition of the property was was decreed and made, and certain parcels thereof, or eleven twenty-fourths of the whole, were set apart to Sam C. Vineyard, but none to the said Anna W. Vineyard. The partition included unsold town lots in the town of Lamar. Eleven forty-eighths of the property, consisting of tracts and town lots, was set apart to the heirs of W. G. Hale, and eleven forty-eighths to James B. Wells, Sr., as the owner of the interest of Ebenezer Allen; and one twenty-fourth each to R. B. Marcy and to Elizabeth Huntington, the owner of the Erastus Williams interest.

The land known as the Lamar property is a peninsula which is bounded on the west by Copano Bay, on the east by St. Charles Bay, and on the south by the bay of Aransas, these bays being waters or arms of the Gulf of Mexico; and the property in controversy is on the south end of the peninsula, and is bounded by the shores of the above mentioned bays on the west, south, and for the most of the distance on the east. On the north, and for a part of the distance on the east, it is bounded by lands of the same property claimed by another party. The defendant owned the Allen interest in the property in controversy, set apart to Wells in the partition. He had a quitclaim deed for the portions set apart to Sam C. Vineyard, executed to him May 29, 1884, by S. Z. J. Beetley, and recorded June 5, 1884. Under this deed he claimed title by five years limitation. He had assessed the land and paid taxes thereon every year since 1884. He had used it as a pasture for his stock, and had controlled all of the land inside the pasture, except some small tracts which the owners lived on and had inclosed separately. Defendant had no improvements on the land and did not occupy it except to pasture

his cattle upon. The land was inclosed by the shores of the bays and fences belonging to O'Connor on the north and east, erected for the purpose of inclosing lands belonging to others on the north. Before O'Connor bought the land to the north and east of the land in controversy, one Herring claimed the land on the north and one Little the tract on the north and east. Commencing at the northwest corner of the land in controversy, on the shore of the bay, Herring built a fence clear across the peninsula to inclose his land on the north. This fence was built about fifteen feet north of his south line, on land claimed by him. Little claimed a tract south of the eastern part of the Herring tract, and inclosed it by a fence running from the shore of St. Charles Bay west to a point on Herring's south line; this fence ran parallel with Herring's south fence, fifteen feet from it. From the point mentioned, Little ran a fence south to the north boundary line of the town lots; thence east to St. Charles Bay. Defendant had an agreement with Herring to keep up his south fence from Copano Bay to the point opposite Little's northwest corner. This agreement had existed for more than five years before the suit was brought. There was no agreement shown with Little, but after O'Connor had bought both the Herring and Little tracts, he built a wire fence along the lines, and took away the two fences built by Herring and Little along Little's north line. Defendant made an agreement with O'Connor within less than five years before the suit was brought to keep the entire fence in repair. The map of the Lamar property shows a town plotted off on the south end of the peninsula, below the Little tract and a line extending west from its southwest corner, into lots, blocks, and streets, but there was no town; the land appeared as the rest of it, and was used to graze cattle on, except a few lots that had been sold and were separately inclosed.

A review of the evidence fails to show any possession of the land that would indicate an adverse claim to the true owner. The grazing of cattle thereon is not sufficient adverse use to support the statute of limitations. Fuentes v. McDonald, 85 Texas, 136; Selman v. Hardin, 58 Texas, 86; Whitehead v. Foley, 28 Texas, 291. The adverse holding must depend upon the sufficiency of the inclosure. The only artificial barriers against access to the land were the fences built first by Herring and Little, and rebuilt by O'Connor to fence in and inclose other lands to the north of the land in controversy, with no intention to inclose the latter. There was no change in the fences, nor any hostile or open assertion of exclusive possession in inclosing the land that would apprise the owner that an adverse claim was being asserted thereto. There was only an agreement to keep in repair fences built to inclose other land. By far the greater part of the boundaries were the shores of the bay, with nothing to indicate that they were relied on or used to inclose the land and keep out any person desiring access thereto. The inclosure was not such as to show the assertion by any one of a claim hostile to the true owner, nor indeed such as to give evidence that the land was in fact designedly inclosed. The bay shores were natural barriers, and the only artificial

barriers erected were the fences built to inclose land on the other side of them, with nothing to indicate that they were being used to inclose the land in controversy. To give effect to the fence and bay shores as an inclosure of the land, there must have been acts distinctly indicating that they were relied on as such. The artificial barriers must be sufficient to notify the public that the land is appropriated. Brumagin v. Bradshaw, 39 Cal., 24. When we take into consideration the extent of the bay shores, the size of the tract, the inclosures of others, and the facts that the fences were made to inclose other lands than those in controversy, and that the defendant did not claim title to all the land within the barriers relied on to form the inclosure, the evidence is clearly insufficient to show a possession to support the bar of five years limitation.

The appellee has presented two cross-assignments of error.

1. That the court erred in admitting in evidence the deed from Anna W. Vineyard and her husband to Lillian Vineyard for the Colt estate interest in the land, because it was executed after the institution of the suit. The conveyance by Colt's heirs to Anna Vineyard vested in her the legal title to the interest that had been conveyed to Samuel Colt, subject to the administration of the estate of James W. Byrne. Soye v. McAlister, 18 Texas, 80. The sale afterwards made in the administration of Byrne's estate passed the equitable title by mesne conveyances to Lillian Vineyard, who being vested with the equitable title, could acquire the legal title after the institution of the suit.

2. That the court erred in not admitting in evidence the return on the execution and the sheriff's deed in the sale of the interests set apart to Samuel C. Vineyard in the partition suit upon the judgment against Vineyard, as shown by bill of exception. Passing over the objection that the bill of exception is insufficient, it is apparent that the error, if any, was immaterial, because all of the interests in the lands involved in this suit had passed out of him prior to the partition, by his deed to Samuel Harvey Vineyard; and the only purpose the sheriff's deed could have subserved was to prescribe under it, and this was served by the deed from Beetley to the defendant.

It is our conclusion that the judgment of the court below should be reversed, and that judgment should be here rendered in favor of the appellants for the undivided eleven twenty-fourths of the land sued for and left in controversy by the answer of the defendant and for the entire balance, and judgment will be so entered.

*Reversed and rendered.*

Writ of error denied.