HEARD et al. v. VINEYARD et al.
(No. 49-2721.)

(Commission of Appeals of Texas, Section A.
June 4, 1919.)

1. EXECUTORS AND ADMINISTRATORS ☞349(2)
—SALE UNDER ORDER OF COURT—COLLATER-
AL ATTACK.

In a collateral proceeding, no presumption
can be indulged against the validity of an order
of the probate court directing a sale of lands.

2. EXECUTORS AND ADMINISTRATORS ☞349(2)
—ORDER FOR SALE OF LAND TO PAY DEBTS—
ESTABLISHMENT OF CLAIMS — VALIDITY OF
ORDER—COLLATERAL ATTACK.

An order of sale of land to pay a claim,
made by the county court on an application un-
der Rev. St. 1911, arts. 3489, 3490, is not void
and subject to collateral attack because the
claim was not then established, where the rec-
ord shows subsequent establishment, classifica-
tion, and payment, and therefore its existence.

3. HUSBAND AND WIFE ☞276(6)—COMMUNI-
TY PROPERTY—ADMINISTRATION—SALE—EX-
ISTENCE OF COMMUNITY DEBTS.

Where a wife died prior to her husband and
their estates were combined, persons claiming
under sale by the executor or administrator of
the husband's estate, in order to establish title
to the interest of the heirs of wife, must prove
the existence of the community debts at date
of the sale.

4. HUSBAND AND WIFE ☞276(6) — COM-
BINED ESTATES—SALE OF LANDS—TITLE OF
PURCHASER.

Where plaintiffs proved the existence of
community debts established by suit, classified
in the estate of deceased husband and one-half
thereof paid out of the consolidated estates of
the deceased husband and deceased wife, the
lands being sold prior to the opening of ad-
ministration on the wife's estate and not in-
ventoried as a part thereof, and the proceeds of
the sale formed assets of the consolidated estates
and entered into the amount distributed to the
heirs of both, held, in view of the record, that
the sale by the executor of the estate of deceased
husband was valid, vesting purchaser with title
of both of the estates.

5. JUDGMENT ☞712—JUDGMENT IN FORMER
SUIT BETWEEN SOME OF THE PARTIES—EVI-
DENCE OF TITLE.

In an action of trespass to try title, a judg-
ment in another proceeding vesting in one of
plaintiffs an undivided interest in the land in
controversy, was admissible as a link in plain-
tiff's chain of title, notwithstanding defendants
were not parties to that suit, and such judg-
ment, in connection with the decree of partition
and sale by an executor, held to establish title
in plaintiffs.

6. JUDGMENT ☞486(1)—BINDING UPON PAR-
TIES — COLLATERAL ATTACK BY STRANGER —
PREJUDICE TO CLAIMS.

While a judgment binds only the parties
thereto and those in privity with them, it is not
subject to collateral attack by a stranger unless

he shows that he has rights, claims, or interests
which would be prejudiced or injuriously affect-
ed by its enforcement.

7. JUDGMENT ☞501—VALIDITY—ERRONEOUS
VIEW OF LAW—COLLATERAL ATTACK.

A judgment based upon an erroneous view
of the law is not for that reason void and sub-
ject to collateral attack.

8. ESTOPPEL ☞97—THEORY OF FORMER SUIT
BETWEEN ONE OF THE PARTIES AND ANOTH-
ER—ESTOPPEL TO ASSERT CONTRARY THEORY.

In trespass to try title, defendants not be-
ing parties to a suit of plaintiffs against pur-
chaser, plaintiffs are in no manner estopped to
assert another and contrary theory, from that
upon which they recovered from the purchaser,
upon which to base a recovery against defend-
ants.

9. TRESPASS TO TRY TITLE ☞6(2)—NECES-
SITY OF TITLE IN PLAINTIFFS — TRANSFER
PENDENTE LITE — JUDGMENT INURING TO
GRANTEE'S BENEFIT.

While the plaintiffs in trespass to try title
must have title at the commencement of the
suit, and one without title cannot sue for the
use of another, in such action, a conveyance
pendente lite by plaintiff does not affect the
progress or determination of the suit, and gran-
tee is bound by the judgment rendered, and a
judgment for plaintiff inures to grantee's bene-
fit, and such conveyance does not constitute an
outstanding title.

Error to Court of Civil Appeals of Fourth
Supreme Judicial District.

Trespass to try title by Lillian Vineyard
and others against Fannie W. Heard and
others in which Anna W. Vineyard and an-
other intervened and adopted plaintiffs'
pleadings. Judgment that plaintiffs and
interveners recover interest in lands to
which parties had filed disclaimers, but that
they take nothing as against any of the oth-
er parties, and plaintiffs appealed to the
Court of Civil Appeals, where the judgment
of the district court was reversed in part,
and judgment rendered for plaintiffs (167 S.
W. 22), and defendants bring error. Judg-
ment of the Court of Civil Appeals affirmed.

Wilson, Dabney & King, of Houston, and
E. A. Stevens, of Rockport, for plaintiffs in
error.

Fiset, McClendon & Shelley, of Austin,
for defendants in error.

SONFIELD, P. J. Action in trespass to
try title instituted by Lillian Vineyard, J.
M. Thornton, Mattie B. Iglehart and hus-
band, and K. J. Edwards, plaintiffs, against
Fannie W. Heard and husband, W. J. J.
Heard, and Rob Johnson, defendants, for the
recovery of an undivided 11/24 interest in
certain tracts of land out of what is known
as the "Lamar Peninsula." By amendment,
J. M. Brundrett was made a party defend-
ant, and judgment of partition prayed for as

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

against him. Heard and Johnson pleaded not guilty, and answered that subsequent to the institution of the suit Lillian Vineyard had executed a deed to her mother, Anna W. Vineyard, and her brother, S. H. Vineyard, conveying to them all her interest in the lands sued for. Anna W. Vineyard and S. H. Vineyard intervened in the suit, adopting as their own the pleadings filed by the plaintiffs. Brundrett answered by general denial and a special plea that the land in question, so far as it included lands set apart to James B. Wells, Sr., in a partition of the Lamar tract, was acquired by him with the community funds of himself and deceased wife, Hannah Brundrett, and that her children had an interest therein, and he prayed that they be made parties. The children intervened, setting up their interest in the land. James B. Wells filed a plea, claiming an interest through purchase by himself and W. J. J. Heard from Mrs. Hynes, a daughter of Hannah Brundrett.

The cause was tried by the court without a jury, and judgment rendered that plaintiffs and interveners, Anna W. and S. H. Vineyard, recover an 11/24 interest in the lands to which parties had filed disclaimers, and that they take nothing as against any of the other parties. The cause was held on the docket for the purpose of partition. On appeal, the judgment of the district court was reversed, and judgment rendered for the plaintiffs. 167 S. W. 22.

The facts are set out fully in the statement of the case by the Court of Civil Appeals. The following are the pertinent facts taken in the main from such statement:

The title to parts of and interests in the Lamar Peninsula has been before our courts in the following cases: Vineyard v. O'Connor, 90 Tex. 59, 36 S. W. 424; O'Connor v. Vineyard, 91 Tex. 488, 44 S. W. 485; Vineyard v. Brundrett, 17 Tex. Civ. App. 147, 42 S. W. 232. The last-cited case involves the very lands and interests therein in controversy in this suit. Each of the other cases has an indirect bearing upon this controversy.

J. W. Byrne, the grandfather of Anna W. Vineyard, at one time owned the whole of the peninsula. At the time of his death, he owned 27/144; Allen and Hale, 27/144; Samuel Colt or his heirs, 78/144; and E. Williams, 12/144. The interest of the Colt heirs passed 1/2 or 39/144 to Allen and Hale, the other 1/2 or 39/144 to Anna W. Vineyard, the conveyance to Anna W. Vineyard being made in settlement of a claim held by the Byrne estate against the Colt estate. The Allen interest passed to James B. Wells, Sr. J. W. Byrne died prior to May, 1862, testate. His will was probated, and Ann Willie Byrne (afterwards Vineyard) and her mother, Ann E. Byrne, were made the residuary legatees and devisees. J. W. Vineyard, the administrator

de bonis non of the Byrne estate, was regularly authorized to sell all the interest of the estate in the Lamar peninsula. He thereafter made the sale to S. C. Vineyard, which was duly reported and confirmed on May 28, 1872. S. C. Vineyard conveyed the interest thus acquired to Samuel Harvey Vineyard by deed dated the 8th day of October, 1873, and filed for record the same day. Samuel Harvey Vineyard subsequently conveyed same to Lillian Vineyard, one of the plaintiffs herein, and under whom the other plaintiffs and interveners claim.

In 1876, a suit entitled Hale v. Vineyard was filed in Aransas county for the purpose of the partition of the Lamar peninsula. S. C. and Anna W. Vineyard were parties to this suit, but Samuel Harvey Vineyard was not a party, though the deed from S. C. Vineyard to him was duly of record at that time, and plaintiffs claim that he was not represented in said partition suit. Certain tracts were set apart in severalty to S. C. Vineyard and to the other parties to said partition suit, including James B. Wells, Sr. Soon after the decree of partition, S. C. Vineyard executed powers of attorney to his wife, who in virtue thereof and for herself conveyed to John C. Herring the greater part of the lands set apart to S. C. Vineyard in the partition. The lands so conveyed by mesne conveyances vested in D. M. O'Connor, and were the subject of litigation in the suits of Vineyard v. O'Connor, supra, and O'Connor v. Vineyard, supra.

James B. Wells, Sr., died, testate, in February, 1880, some 15 months after the death of his wife, Lydia A. Wells, his will being duly probated. Thereafter the executor (not independent) of his estate made application for an order of sale of the lands set apart to Wells in the partition proceedings. The order was entered and in virtue thereof the executor sold and conveyed the same to John M. Brundrett. The sale was duly reported and was confirmed on November 21, 1881.

After the purchase of the lands by Brundrett, a suit was instituted against him by S. C. and Anna W. Vineyard as guardians of Lillian Vineyard to recover an undivided 11/24 of said lands. Lillian Vineyard claimed title under the hereinabove mentioned deed to her from Samuel Harvey Vineyard. The 11/24 sought to be recovered was composed of two separate and distinct fractional interests, one of 27/144 owned by J. W. Byrne at his death, and one of 39/144, being the interest conveyed by the heirs of Samuel Colt to Anna W. Vineyard.

In the district court, judgment was rendered in favor of defendant Brundrett. On appeal, the Court of Civil Appeals reversed the judgment of the district court and rendered judgment in favor of Lillian Vineyard, vesting in her title to an 11/24 undivided interest in said lands. Vineyard v. Brundrett, 17 Tex. Civ. App. 147, 42 S. W. 232.

Writ of error was refused by the Supreme Court. In that case the court held that the deed from the heirs of Samuel Colt to Anna W. Vineyard, conveying the 39/144 interest, was in trust for the estate of J. W. Byrne, and this interest, together with the 27/144 interest owned by Byrne at the date of his death, pased by the deed from the administrator of the estate of Byrne to S. C. Vineyard. Recovery by plaintiff was based on the theory that the partition decree was not binding upon Samuel Harvey Vineyard, the grantor of Lillian Vineyard, he not being a party to said suit or represented therein.

Pending the suit of Vineyard v. Brundrett, a separate and distinct suit, involving other tracts in the peninsula, was instituted by Lillian Vineyard, through her guardians against O'Connor. In that case the construction of the deed to the 39/144 undivided interest in the peninsula from the heirs of Samuel Colt to Anna W. Vineyard was before the court. The Court of Civil Appeals held, as in Vineyard v. Brundrett, that the title vested in Anna W. Vineyard in trust for the estate of J. W. Byrne. On writ of error the Supreme Court held that through the deed from the heirs of Samuel Colt the title to a 39/144 undivided interest vested in Anna W. Vineyard as her separate property, and passed by her deed for herself and as attorney in fact for S. C. Vineyard to John C. Herring. In that case the recovery of the Vineyards was limited to 27/144.

Defendant Fannie W. Heard, wife of W. J. J. Heard, asserts title as heir of James B. Wells, Sr., and his wife, Lydia A. Wells, having, apparently, acquired the title of the other heirs. Defendant Johnson was the tenant of the Heards. J. M. Brundrett was made a party defendant for the purpose of partition. Interveners, James B. Wells and the children of J. M. Brundrett, assert title to the community interest of Hannah Brundrett, deceased wife of J. M. Brundrett. The Court of Civil Appeals having found that through the purchase by Brundrett from the executor of James B. Wells, Sr., the lands became his separate property, and, no error being assigned to such finding, the claim of the interveners need not be further considered.

The facts are somewhat complicated, and many interesting as well as intricate questions are raised, all such questions having been passed upon by the Court of Civil Appeals in its opinion. The case, as viewed by us, presents for determination three questions: The validity of the sale by the executor of the estate of James B. Wells, Sr., to J. M. Brundrett; the effect of the judgment in the case of Vineyard v. Brundrett; and the effect of the conveyance by plaintiff, Lillian Vineyard, pending the suit, of all her interest in the lands to Anna W. and S. H. Vineyard.

[1] Defendants assert the invalidity of the sale of the lands by the executor of the estate of J. B. Wells, Sr., to J. M. Brundrett on the ground that the record affirmatively discloses that no necessity existed for such sale, or that such sale, if valid, did not pass title to the one-half interest of the heirs of Lydia A. Wells, wife of J. B. Wells, Sr., who predeceased him some 15 months. They assert that there were no community debts; that all of the allowed claims were the separate debts of Wells, created subsequent to the death of his wife; and, as stated in their application for writ of error herein and the argument accompanying same, "the recorded application for sale on which the order was made showed that money on hand of the estate exceeded all allowances and debts of the estate."

In the exhibit of the estate, accompanying and made a part of the application of sale, the item of $2,141.65 appears under the head of "amount realized from sale of personal property." This amount was sufficient to pay all of the allowed claims, allowances to the children, and estimated expenses. The record discloses that the personal property was sold some months prior to the application for sale of the lands. Under the head of "property of the estate remaining on hand," various properties were listed, but the money derived from the sale of personal property was not included. From the mere statement in the exhibit of the amount realized from the sale of personal property, it cannot be held that it appears affirmatively that the amount so realized was on hand at the date of the application for sale of the lands. It might under some circumstances be so inferred or presumed, but in this collateral proceeding no presumption can be indulged against the validity of the order of the probate court directing a sale of the lands. Tom v. Sayers, 64 Tex. 339; Guilford v. Love, 49 Tex. 715.

[2] If, however, it were established that the money from the sale of personal property was on hand at the date of the application for sale, such amount would not have been sufficient to pay the claims against the estate. In addition to the allowed claims, allowances, and estimated expenses, the exhibit disclosed claims rejected and then in suit amounting to $2,842. One of these claims was that of "T. M. White, note and interest about $2,500." Subsequent to the sale of the lands herein, this claim was reduced to judgment, the judgment being in the sum of $2,185.11. The note was executed by James B. Wells, Jr., as principal and James B. Wells, Sr., and Jno. M. Brundrett as sureties in 1877. The record discloses an order classifying said judgment as a claim of the fourth class and ordering same paid in due course of administration.

After the application for the order of sale and prior to the execution of the deed by

the executor of Wells' estate to Brundrett, administration was opened on the estate of Lydia A. Wells, wife of James B. Wells, Sr. The executor of the estate of James B. Wells, Sr., was appointed administrator of her estate. Thereafter the two estates were consolidated. One-half of the judgment recovered by White was paid out of the consolidated estate and charged in the final distribution to J. B. Wells, Jr., primarily liable on the note. The indebtedness was unquestionably a community debt.

At the date of the application and order of sale, the claim had not been established. It was, however, a claim against the estate then due and payable. The court had full and complete jurisdiction, and was empowered to order a sale of lands belonging to the estate for the payment of debts of the estate. Under article 3489, an application for order of sale may be made by an administrator when deemed necessary by him "to pay the local charges and claims against the estate." Under article 3490, it is provided that the application shall be accompanied by an exhibit "showing fully * * * the charges and claims against said estate that have been approved or established by suit, or that have been rejected and may yet be established, and the amount due, or claimed to be due, on each." The statute does not limit the exercise of the power to claims established against the estate, when the application is made by an administrator or executor. The test is not the establishment, but the existence of the claim. It may not be good policy or expedient to order the sale of lands of an estate for claims not then established, but it is not inhibited by statute. A claim may be rejected even though liability is recognized, in order that the exact amount may be ascertained, or, as is probable with reference to the White claim, to fix the liability of other parties jointly or otherwise liable with the estate. The claim of T. M. White was a note. James B. Wells, Sr., and J. M. Brundrett were sureties; J. B. Wells, Jr., being primarily liable. The suit upon the rejected claim fixed the liability of all the parties to the note. It is made incumbent upon the court to pass upon the application for sale and to determine whether a necessity exists therefor. The fact that the administrator or executor applying for the sale must include in the exhibit, not only claims allowed, but also claims that have been rejected and may yet be established, contemplates that such rejected claims should be considered by the court in determining whether a necessity exists for such sale.

County courts in all matters relating to administration of estates of deceased persons are courts of general jurisdiction as to all matters within the scope of the power conferred upon them. The order of sale is a judgment of such court, and to be subject to collateral attack must be shown to be void. It cannot be held that an order of sale to meet a claim, not then allowed or established, the record showing its subsequent establishment, classification, and payment, and therefore its existence, is void and open to collateral attack.

[3, 4] Lydia A. Wells having died prior to the death of her husband, persons claiming under a sale by the executor or administrator of the husband's estate, in order to establish title to the interest of the heirs of Lydia A. Wells, must prove the existence of community debts at the date of the sale. Moody v. Butler, 63 Tex. 210; Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367. In the first cited case, the wife predeceased the husband, and the court said:

"Joel Clapp did not die till the 1st of January, 1854, and we have no evidence that at the time of his death any debt existed against the community estate. In order to give the deed of Joel Clapp's executor the effect of passing title to the entire land, as well that portion of which he died possessed as of the share inherited by the children from their mother, it was necessary that there should have been community debts of Joel Clapp and wife existing at the time the land was sold by Clapp's executor. Sanger v. Moody, 60 Tex. 96. The burden of proving this fact was upon the parties attempting to give this effect to the deed. There was no proof offered by them on this subject, but they relied upon the simple fact that debts had been presented and allowed against the estate, claiming that the presumption was that they were community debts, as the wife had died not quite two years before the death of her husband."

Herein, plaintiffs prove the existence of a community debt, established by the suit, classified in the estate of Wells and one-half thereof paid out of the consolidated estates of Wells and wife. The lands were sold to Brundrett prior to the opening of administration on the estate of Lydia A. Wells, and were not inventoried as a part of her estate. The proceeds of the sale of the lands to Brundrett formed part of the assets of the consolidated estates, and as such entered into the amounts distributed to the heirs of Wells and wife. We hold that, in view of the record, the sale by the executor of the estate of James B. Wells, Sr., to Brundrett was valid, vesting in him the title of the estate of James B. Wells, Sr., and that of the heirs of Lydia A. Wells.

So, holding, it becomes unnecessary to pass upon the question of the estoppel of the Wells' heirs by their acceptance of the benefits of the sale and their participation in the final distribution of the joint estates, without offer of restitution of the amounts so received; the Court of Civil Appeals holding such heirs thereby estopped to deny the validity of the sale.

[5] Subsequent to the purchase of the

lands by Brundrett, in the case of Vineyard v. Brundrett, referred to in the statement of the case, judgment was rendered divesting title to an undivided 11/24 of the lands out of the defendant Brundrett, and vesting same in the plaintiff therein, Lillian Vineyard, being the same interest involved in this suit.

Defendants admit the conclusive effect of the judgment on the parties thereto, and that as between plaintiffs and Brundrett and those in privity with him the title is in plaintiffs. Defendants say, however, that they, not holding or claiming under Brundrett and not having been parties to that suit, have the right to show the exact issues litigated in Vineyard v. Brundrett and the theory upon which the plaintiff recovered therein. They assert that, Lillian Vineyard having recovered judgment against Brundrett on the ground that she had the title and Brundrett had no title, such judgment is not admissible as against them to establish that Brundrett did have title, and that his title through such judgment vested in Lillian Vineyard.

The recovery in Vineyard v. Brundrett was predicated upon the proposition that the partition decree in Hale v. Vineyard was not binding upon Samuel Harvey Vineyard, he not being a party thereto or represented therein; that the 39/144 interest conveyed by the heirs of Samuel Colt to Anna W. Vineyard was conveyed to her in trust for the estate of Byrne, and it, together with the 27/144 owned by Byrne at the time of his death, making a total of 11/24, vested in S. C. Vineyard by deed from the administrator of the Byrne estate, and by mesne conveyance title thereto vested in Lillian Vineyard. Defendants insist that in Vineyard v. Brundrett the proposition that the partition decree was not binding upon Samuel Harvey Vineyard was not contested, and herein they seek to establish that said decree was binding upon him, he being represented in the suit by S. C. Vineyard, who reserved the right of control as guardian in his deed conveying the lands to Samuel Harvey Vineyard. They further insist that the holding in Vineyard v. Brundrett, as to the 39/144 interest conveyed by the heirs of Samuel Colt to Anna W. Vineyard was subsequently repudiated by the Supreme Court in the case of O'Connor v. Vineyard, supra, a separate and distinct suit between different parties involving an interest in other lands, but necessitating a construction of the same deed.

Conceding the contention of defendants that the decree in partition was binding upon Samuel Harvey Vineyard, and that the 39/144 interest, as held in O'Connor v. Vineyard, contra to the holding in Vineyard v. Brundrett, vested in Anna W. Vineyard as her separate property, it follows that the interest of James B. Wells, Sr., in the Lamar tract was, through said partition decree, segregated and set apart to him free and clear of any rightful claim therein on the part of Samuel Harvey Vineyard. In other words, it establishes a good and valid title in James B. Wells, Sr., to the several tracts so set apart to him. The tracts set apart to Wells were, under the order of the court, sold by the executor of the estate of James B. Wells, Sr., to Brundrett. This sale was in all things valid, and resulted in divesting the estate of James B. Wells, Sr., and the heirs of Lydia A. Wells of all right, title, and interest in and to the lands. The judgment in Vineyard v. Brundrett divested title out of Brundrett, and vested same in Lillian Vineyard, one of the plaintiffs herein, and under whom the other plaintiffs claim.

Plaintiffs in this cause introduced in evidence the partition proceedings, including the decree, which proceedings defendants contend were in all things valid and binding; the proceedings in the administration of the estate of James B. Wells, Sr., including the order of sale, the report of sale to Brundrett, its confirmation, and the deed from the executor of the estate of James B. Wells, Sr., to John M. Brundrett. Having shown title in Brundrett, the defendant in Lillian Vineyard v. Brundrett, the judgment therein in favor of Lillian Vineyard vesting in her an undivided 11/24 interest in said lands was admissible in evidence as a link in plaintiffs' chain of title, notwithstanding defendants were not parties to that suit. This judgment in connection with the decree of partition and the sale by the executor of the estate of James B. Wells, Sr., to Brundrett established title in plaintiffs. McCamant v. Roberts, 66 Tex. 260, 1 S. W. 260; Ellis v. Le Bow, 96 Tex. 532, 74 S. W. 528; Grassmeyer v. Beeson, 18 Tex. 753, 70 Am. Dec. 309.

[6] Admittedly, as between plaintiffs and Brundrett, the judgment is conclusive, and the title is in the plaintiffs. While it is true that a judgment is binding only upon the parties thereto and those in privity with them, it is also true that a judgment is not subject to collateral attack by a stranger unless he shows that he has rights, claims, or interests which would be prejudiced or injuriously affected by the enforcement of the judgment. 23 Cyc. 1068; Grassmeyer v. Beeson, 18 Tex. 753, 70 Am. Dec. 309.

[7] The title of the Wells' estate and of the heirs of James B. Wells, Sr., and Lydia A. Wells having vested in Brundrett, defendants, as such heirs, are in no wise affected or prejudiced by the judgment against Brundrett. They are in no better position to attack or impeach the judgment than if their ancestor had never held an interest in or title to said land. The judgment being concededly conclusive upon Brundrett and those in privity with him, and as between them and plaintiffs the title being in the plaintiffs,

a successful impeachment of the judgment would not establish an outstanding title in Brundrett, and certainly would not revest the title in defendants as heirs of James B. Wells, Sr., and his wife; their title having passed to Brundrett. The evidence adduced established, under defendants' own theory, a good and valid title in James B. Wells, Sr., which title we hold vested in Brundrett. The judgment in Vineyard v. Brundrett clearly and definitely vested the title to an 11/24 interest in the lands so acquired by Brundrett in Lillian Vineyard. Conceding to defendants the right to go back of the judgment, establishing that it was based upon an erroneous view of the law, this would avail them nothing, for a judgment based upon an erroneous view of the law is not for that reason void and subject to collateral attack.

[8] Defendants stress the proposition that the Vineyards, having recovered in the Brundrett Case upon the theory that James B. Wells, Sr., and consequently Brundrett, never had title to the 11/24 interest therein, and herein involved, are estopped to urge in this case the entirely contrary theory that Wells did have a title which passed to Brundrett through the executor's sale and vested in Lillian Vineyard through her judgment against Brundrett. Such an estoppel can only be urged in favor of parties to that suit. Defendants not being parties to the suit of Vineyard v. Brundrett, plaintiffs are in no manner estopped to assert another and contrary theory upon which to base a recovery, which in this case is but an adoption of defendants' theory.

[9] During the pendency of this suit, Lillian Vineyard, the plaintiff, conveyed all her interest in the lands to Anna W. Vineyard and S. H. Vineyard. Defendants pleaded this by way of defense as an outstanding title. Thereupon the grantees in said deed intervened, adopted the pleadings of plaintiff, Lillian Vineyard, and prayed "that any interest they may have in said lands be embraced in the recovery of plaintiff, Lillian Vineyard, in trust for said interveners."

It is well settled that a plaintiff in trespass to try title must have title at the commencement of the suit, and that one without title cannot sue for the use of another in such action. To this effect are the cases cited and relied upon by defendant. Hooper v. Hall, 30 Tex. 154; Birmingham v. Griffin, 42 Tex. 147.

It is equally well settled that a conveyance pendente lite does not affect the progress or determination of the suit. The grantee is bound by the judgment rendered, and if a proper, is not a necessary, party to the suit. The effect of a judgment in favor of plaintiff who has thus conveyed pending the suit is as prayed for in the intervention of grantees herein. It inures to the benefit of the grantee, and such conveyance does not constitute an outstanding title. Lee v. Salinas, 15 Tex. 496; Smith v. Olsen, 92 Tex. 181, 46 S. W. 631.

We are of opinion that the judgment of the Court of Civil Appeals should be affirmed.

HAWKINS and GREENWOOD, JJ. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

PHILLIPS, C. J., not sitting.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes