Iva Roberts DINGMAN et al., Appellants,

v.

Howard C. SPENGLER, Jr., et al., Appellees.

No. 5574.

Court of Civil Appeals of Texas.

El Paso.

Sept. 11, 1963.

Rehearing Denied Oct. 23, 1963.

Leonard Howell, Midland, for appellants.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., Charles L. Tighe, Midland, for appellees.

FRASER, Chief Justice.

This is an appeal by Iva Roberts Dingman and Carl H. Perry from an adverse judgment rendered in the 142nd Judicial District Court of Midland County, Texas, against their claim to land under the ten-year statute in a Trespass to Try Title suit. Trial was before a jury, but at the close of the evidence the trial court withdrew the case from the jury and granted judgment for title and possession of the property to appellees as a matter of law.

The controversy here involves a tract of land described as being 24.8 acres of land out of Section 11, Block 40, T2S, T. & P. Railway Company Survey, Midland County,

Texas. It is shown and designated as Tract F4 on a plat referred to by both sides of this controversy, and which appears at page 555 of the Statement of Facts. It appears

that the appellees here are the record owners of said Section 11, and the appellants are the record owners of certain land lying to the north of Section 11 and being a part of the South one-half of Section 2, Block 40, T2S, T. & P. Railway Company Survey, Midland County, Texas. The north boundary line of Section 11 is the south boundary line of Section 2 and is intersected diagonally from southwest to northeast by railroad and highway rights of way, with the result that the tract here involved, to-wit, Tract F4 of Section 11, lies north, and Tract F3 of Section 2 lies to the south of the railroad and highway. Appellees claim title to F4 under and through one Dennis Kennedy, who was grantee from the original patentees of said Section 11. Appellants claim title to Section 2 through one T. B. Roberts, who bought part of Section 2 in 1904. The original and source of the titles to F4 and F3 are not in contest. It is alleged that appellants had used F4 for many years, although it originally belonged to appellees, and appellees had for many years used F3, although it originally belonged to appellants and their predecessors in title. The reason for this arrangement is apparent from the map exhibit, a copy of which is included with this opinion so that the reader will be better able to follow the discussion. The diagonal course of the railroad cuts off F4 from the northern part of its section, and F3 from the southern part of its area, thereby making it economical and feasible for the various parties in ownership and possession to use each other's land.

Appellants here claim title to Tract F4 by adverse possession for ten years or more. It appears that the tract herein involved lies within the fences of the part of Section 2 long owned by appellants, but was never separately fenced or set out, the fences of appellants extending south to the highway and railroad rights of way at the east and west terminal points of the tract involved. It appears undisputed that the fence enclosing all of the South half of Section 2 included F4 and was kept in repair

by the appellants, referred to as the Roberts family, although it is not clear that they *built* the fences.

In 1957, after the land in Section 2 had been divided among the Roberts heirs, Mrs. Iva Roberts Dingman, who had received part of this land, built a home, dug a well and planted some 400 trees on Tract F4. She was soon notified that she must not move this home over to Tract F3. She thereupon filed the suit in question, claiming title by virtue of ten years or more adverse possession. At the conclusion of the trial of the case, the court withdrew the matter from the jury and granted judgment for title and possession of the tract in question to appellees. In the trial court appellants did not set out any particular ten-year period during which their title matured, but alleged possession and use of the property for more than fifty years.

Appellants' first point alleges error on the part of the trial court in taking the case from the jury and awarding judgment to appellees. The Statement of Facts here is voluminous, and we will not attempt to review the entire testimony, but rather make an attempt to touch upon the salient points.

First of all, with regard to the fencing, it must be noted that Tract F4 was enclosed by the fences of appellants as they joined the highway and railroad rights of way, and then proceeded in a northerly direction. The northerly boundary of Tract F4 does not appear to have been set off from appellants' Tract 2 by any fence, and so it seems apparent that the tract in controversy here—to-wit, F4—was fenced on its southerly boundary by the highway and railroad rights of way, and on its east and west boundary by appellants, but was not fenced at all on its northern boundary. It therefore is clear that F4 was not divided or separated from F2, appellants' portion of Section 2. It appears from the record that appellants' cattle often grazed on Tract F4, but watered on appellants' own property in F2; and although appellants did raise crops on a portion of their part of Section 2, they never

cultivated any part of Tract F4 and put no improvements of any kind on this tract until 1957. There is no evidence that appellants or any of their predecessors rendered F4 for taxes or paid any taxes on same until 1958, and never executed any instruments of record referring to the title of F4 until 1958, although they had executed title instruments involving their part of Section 2 on several occasions. On the contrary, it appears that appellees did pay taxes on Section 11, of which F4 is a part, and on three different occasions—to-wit, 1922, 1932 and 1949—the owners of Section 11 sold land for right of way purposes and received, without protest from any appellant, the compensation therefor. On the opposite side of the picture, we cannot find in the record any overt or visible act or manifestation on the part of the appellants showing or defining their intention to claim F4. The only use was apparently the grazing of cattle, but the record does not reveal that they ever dug a well, set up a water trough, or did anything other than permit the cattle to wander down on F4 and graze. The record does reveal that the cattle had to return to F2 in order to obtain water. As stated above the record shows, also, that the owners of Section 11, of which F4 is a part, had paid the taxes on said Section 11 for many, many years, and had committed overt acts indicating ownership, such as the three documentary instruments referred to above, and the receipt and retention of monies for the sale of right of way from and use of Section 11.

It is undisputed that he who seeks title by adverse possession (here, under the 10-year statute) has the burden of proof to prove the elements necessary to establish such adverse possession as defined and delineated by the statute and the cases thereunder. We believe that the case of Orsborn v. Deep Rock Oil Corporation, 153 Tex. 281, decided by the Supreme Court of Texas in an opinion dated March 31, 1954, and cited as 267 S.W.2d 781, is decisive of the matter before us, and we feel that we are constrained to follow the rule and

reasoning in such case, although there is a comprehensive and scholarly dissenting opinion contained within such case. We believe the decision of the case itself is the law governing the matter now before us. The facts in the cited case are very similar to the one before us, in that it involved a tract within a tract that had been used for many years; and, like the tract here, however, had not been separately fenced, and cattle had been permitted to graze on the disputed tract. It appears that the taxes on the larger tract had been paid for many years, but the smaller tract had never been separately rendered. It must be noted that the fencing situation in the Orsborn case is similar to the one before us, in that there is no evidence in this case that appellants deliberately or intentionally fenced any part of Tract F4, but that the tract was within a tract owned and used by appellants. The southerly boundary of F4 was fenced off by the railroad and highway, and there is no evidence that the east and west fences, which substantially contained the property of appellants, were ever built or caused to be built by them for the purpose of asserting any claim to or adversely using Tract F4. In the Orsborn case the Supreme Court pointed out:

> "When the use relied upon to support the statute is grazing, there must be also at the same time sufficient enclosure, such as to give evidence that the land was *designedly enclosed* and to show the assertion of claim hostile to the true owner. Vineyard v. Brundrett [17 Tex.Civ.App. 147], 42 S.W. 232." (Emphasis ours).

Prior to this quotation the court carefully and definitely stated, "It is settled that limitation title cannot be acquired by grazing unenclosed land", and cited cases thereunder. The Supreme Court then goes on and states that it is in agreement with the court of civil appeals that when the disputed tract of land has been casually or incidentally enclosed with other land—especially when, as here, such other land is held by the possessor under deed—the inciden-

tal enclosure and the casual grazing of the disputed tract by cattle straying from the titled land will not admit to such adverse and hostile possession and use as will support the statute of limitations. For the sake of brevity we do not repeat the many cases cited by the Supreme Court. The court also cites from Harmon v. Overton Refining Co., 130 Tex. 365, 372, 109 S.W.2d 457, 460, 110 S.W.2d 555, that in order for a vendee to acquire title by adverse possession of additional or adjoining land outside the limits of the boundaries in his conveyance, he must have actual possession of such additional land of such character as of itself will give notice of an exclusive adverse possession and mature into title after the statutory period. The court states in this particular case (cited in the Orsborn case) that the tract in controversy was not fenced or visibly occupied, and the only use made of same was a casual grazing of cattle. The court, in the Orsborn case, also states as follows in quoting from West Production Co. v. Kahanek, 132 Tex. 153, 121 S.W. 2d 328, 331:

> "Where the character of use of inclosed land, by a claimant of adverse possession, is not such as to constitute, of itself, an actual and visible appropriation of the land, it may be safely said that such use cannot be aided by a fence which casually created the inclosure, and to the construction of which fence neither the claimant of adverse possession nor any person under whom he claims has contributed."

In the case before us the record discloses that appellants and their predecessors did keep the fences up and in repair, but we have no record that they designedly built them. The court states, 267 S.W.2d on page 787 of the Orsborn case: "And the intention of the possessor to claim the land as his own or to hold it for himself must be manifested by open or visible act or declaration showing such a purpose." The court then says, in the next paragraph: "Petitioner had the burden of proving the elements of adverse possession, including 'a claim of right'". The court further states that such proof must be clear and satisfactory; then says: "No matter how exclusive and hostile to the true owner the possession may be in appearance, it cannot be adverse unless accompanied by the intent on the part of the occupant to make it so. The naked possession unaccompanied with any claim of right will never constitute a bar." (This is a quotation from another case adopted and included in the Orsborn opinion). If this were not enough, the Supreme Court, in the Orsborn case, goes on and states as follows:

> "Claim of right must be manifested by declaration or by open or visible act. If there is no verbal assertion of claim to the land brought to the knowledge of the land owner, the adverse possession must be so open and notorious and manifested by such open or visible act or acts that knowledge on the part of the owner will be presumed. Hopkins v. Waterstreet [Tex.Civ.App.], 275 S. W. 303."

With these legal pronouncements from our Supreme Court confronting us, we now examine the record in the case before us to see if the fact situation brings us under the holding in the Orsborn case. It appears from the record that the year 1958 is the only occasion on which any but the record owners of Section 11 rendered F4 for taxation. Mrs. Dingman, one of the appellants, did render it in that year—1958— for taxation. There is no mention of F4 in the various probate proceedings involved in the Roberts (appellants) title. A Jack Perry, brother-in-law of appellant Mrs. Dingman, testified that he lived on the Roberts place (part of Section 2) for about four years beginning about 1922 or 1923; that he lived in the same house with Mrs. T. B. Roberts and Iva Roberts Dingman (who was then Iva Roberts); that Mrs. T. B. Roberts told him that part of the land within the fence enclosing the south half of Section 2, and specifically in the southwest portion of the fenced area, belonged to the Scharbauer Cattle Company. He also tes-

tified that Mrs. T. B. Roberts acknowledged there was an agreement or understanding that the Scharbauers would use that part of Section 2 lying south of the railroad (F3) and the Roberts would use that part of Section 11 (F4) lying north of the railroad. He also testified that neither Mrs. T. B. Roberts nor her son, Holly Roberts (who lived on the place for many years and helped to run it) ever claimed to own that part of Section 11 now designated as Tract F4. Hewitt Perry, grandson of Mrs. T. B. Roberts, who lived on the place with his father, Jack Perry, and visited thereon with his grandmother frequently thereafter, testified that he knew that part of Section 11 was within the fence around the Roberts place, and that this fact was spoken of from year to year, but that neither Mrs. T. B. Roberts nor Holly Roberts ever made any claim to the property, and that no claim was ever made by any of the Roberts family "until this thing came up". The exhibits also show that both the appellants and appellees executed various right of way deeds to the State of Texas. These exhibits show that Mrs. Roberts, in deeding a part of Section 2, made no mention of Section 11; and further, that neither Mrs. T. B. Roberts nor any of her children ever claimed any of the money paid by the State or county for the right of way across Section 11. Also, there was introduced into evidence tax renditions for the years 1929 to 1932, signed by either Mrs. T. B. Roberts or Holly Roberts, which renditions assert that Section 2 was the only property owned by either of them in Midland County, Texas. Furthermore, it is in testimony that Holly Roberts, who was running the place for Mrs. T. B. Roberts, acknowledged to a Mr. Cecil Roberts and to Mr. Clarence Scharbauer, Sr., that part of Section 11 was north of the railroad and within the Roberts fence and that it did not belong to the Roberts family. Furthermore, there is an exhibit showing that a Mr. J. G. Miller leased the Roberts place from 1944 until 1955 and lived on the property. This written lease executed by Mrs. T. B. Roberts and Holly Roberts leased the South half of Section 2, and makes no

mention of Section 11. Mr. Miller testified that while he was on the property, he found out there was an "off piece of land" within the fence, but that he never claimed it, nor did any one of the Roberts family ever claim it. The exhibits show that all of the oil leases executed by the appellants covered only Section 2, and made no mention of Section 11. Other exhibits show that Section 11 was leased in its entirety by some of the appellees. The probate proceedings involving Mrs. T. B. Roberts, who died in 1956, do not make any reference to Section 11 or Tract F4. Shortly thereafter, her son, Holly E. Roberts, died, and Section 11 is not mentioned in the inventory and appraisement of his estate. There is also a statement in the record by appellant Mrs. Dingman, made to Mr. J. M. Speed, Tax Assessor and Collector of Midland County in 1958, that she wanted to pay the taxes on Tract F4 because "she had traded with the Scharbauers for all north of the railroad for what was south of the railroad". This statement, of course, does not indicate or substantiate a prior adverse possession claim, and was made in 1958. Mr. Clarence Scharbauer, Jr. testified that the Scharbauer Cattle Company had leased all of Section 11 for 55 or 60 years prior to this lawsuit, and that there had been an agreement as far back as he could remember that the Scharbauers would use that part of Section 2 (F3) lying south of the railroad, and the Roberts family would use that part of Section 11 lying north of the railroad (F4). While voluminous, all these facts, we believe, are necessary to show that appellants failed to carry out their burden of proof of adverse, hostile and open possession of the tract in question; but, in fact, used the tract by agreement and that it was never designedly fenced by appellants for the purpose of claiming ownership. In other words, the necessary open and notorious acts and claim are not sufficiently presented in the case before us. Various Texas cases have stated very clearly that a claim of right must accompany possession, and that the proof must not only be actual, but visible, continuous, notorious, distinct

and hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. Rick v. Grubbs, 147 Tex. 267, 214 S.W.2d 925; Satterwhite v. Rosser, 61 Tex. 166; Village Mills Co. v. Houston Oil Co., Tex.Civ.App., 186 S.W. 785; Houston Oil Co. v. Stepney, Tex.Civ.App., 187 S.W. 1078.

The cases cited by appellants, in our opinion, have a different fact situation—as, for example, in the case of Wilson v. Rogers, Tex.Civ.App., 343 S.W.2d 309. There the successful adverse claimant committed overt acts—to-wit, wrote letters to the record owners offering to buy or lease the property and stating that if he received no reply he would fence the land and use and claim it and adverse possession. This was certainly an open, adverse and hostile manifestation. Also, in Click v. Collins, Tex. Civ.App., 273 S.W.2d 90, the court apparently was influenced by the fact that the claimant had not only built a fence, but put up a "No Trespassing" sign shortly after going into possession, and the court of civil appeals there apparently felt that this was sufficient visible appropriation of the land.

For the above reasons we feel that we are constrained by the reasoning and ruling of our Supreme Court in Orsborn v. Deep Rock Oil Corporation, supra, to hold that appellants here failed to meet the burden of proof necessary to successfully assert adverse title under the ten-year statute. We must say, in passing, that we have carefully studied the exhaustive and distinguished dissenting opinion of three of the Supreme Court justices in the Orsborn case, but feel, nevertheless, that the case before us is controlled and decided by the majority opinion in the aforesaid Orsborn case. There does not seem to be any disagreement as to the material facts in the case before us, and we believe the court was therefore correct in his action in withdrawing the case from the jury and holding, as a matter of law, that appellants had failed to prove adverse title by the ten-year statute. The actions of the parties, the contents of the documents, and the treatment by various authorities, such as the tax office and the State of Texas, appear to be undisputed. Appellants' first point is therefore overruled.

■ Appellants' second point alleges that the court committed error in setting aside appellants' prior interlocutory decree against certain non-answering defendants, and rendering final judgment after trial for all the record owners. Appellees answer this claim by stating that inasmuch as the court found that appellants had no claim whatever to the land in controversy (Tract F4), appellants therefore could not be damaged by the dismissing of the interlocutory judgment against certain non-answering appellees. In short, appellees' position is that, when the court rendered its judgment that appellants take nothing, the interlocutory judgment was properly overruled. It has been said that proof of title to an undivided interest in a tract will support a recovery of the entire parcel as against a stranger to the title and, therefore, that as against a trespasser the entire premises may be recovered by one who has taken a conveyance of a fractional interest in the property. It has long been the law that a claimant under adverse possession must succeed on the merits of his own position, and not on the weakness of any defendant. In other words, the burden of proof is on the adverse claimant. 41–A Tex.Jur. 523, Sec. 11; Padgett v. Guilmartin, 106 Tex. 551, 172 S.W. 1101. We think the law to be as stated above in both the cases and the text. The court having found title in favor of certain record owners who had answered in the case, therefore title was denied to appellants as against all non-answering appellees, as set forth in the authorities stated above. Appellants' second point is therefore overruled.

■ Appellants' third point alleges that the trial court was in error in refusing to permit appellants to amend their pleadings and bring in new parties after the trial had been completed. We do not find merit

in this point, as the record and transcript show that the parties which appellants desired to bring in at the close of trial had been included in their original petition, but omitted in their amended petition. In Nelson v. Seidel, Tex.Civ.App., 328 S.W.2d 805, the court says: "The amended petition filed by appellee, in which Gillespie was omitted as a party-defendant, had the effect of dismissing the cause as to the said Gillespie." In the matter before us Mr. and Mrs. Stenzel, while mentioned in the original pleadings, were not included as parties defendant in the pleading upon which appellants went to trial. Therefore the court had no jurisdiction over them. It is our opinion that having omitted these parties in their amended petition, appellants—inadvertently or otherwise—dismissed them from the lawsuit. Brennan et al. v. Greene et al., 154 S.W.2d 523 (Tex.Civ.App., wr. ref.); Ridley v. McCallum, 139 Tex. 540, 163 S.W.2d 833. We therefore overrule appellants' third point.

■ Appellants' fourth point complains of the court's refusal to permit a witness who was an attorney to testify relative to a partition deed executed by and between the heirs of Mrs. T. B. Roberts. We overrule this point because it appears from the record that the same matter came before the court through the lips of another witness. The testimony involved a quitclaim deed to Tract F4, given to Mrs. Dingman from her relatives. Mr. Hewitt Perry stated that this exhibit was "part of the entire agreement" and that Mrs. Dingman agreed to take Tract F4 as part of her share. The evidence, therefore, was before the court; but in any event we doubt very much that the evidence was admissible under any consideration, in that it included hearsay testimony and conclusions. In any event its exclusion would not have constituted reversible error under Rule 434, Texas Rules of Civil Procedure. It must be noted that this deed and all transactions concerning it were between and among appellants, and not from or by any of the appellees whom the court found to be the true owners of

Section 11, which included Tract F4. This point is accordingly overruled.

■ In conclusion we should like to point out that, in the voluminous fact record, there are many references as to what various appellants thought or said relative to the type of ownership or possession they were exercising over Tract F4. Without going into the matter other than by this reference, we believe the authorities cited under Point 1 fully discuss and determine this matter, in that they hold that discussions or statements by and between claimants under an adverse possession claim are mere conclusions or inferences and are wholly insufficient to validate title by adverse possession in the absence of the other necessary elements, such as the open, visible and hostile possession and acts designed to show same.

Having found no error, appellants' points are all overruled, and the judgment of the trial court is affirmed.