E. STEWART v. W. A. POLK.

Decided June 29, 1901.

</div>

**1.—Sale of Land—Contract—Mistake—Evidence.**

See evidence held sufficient to show an offer to sell a town lot and an acceptance such as to create a binding contract, and insufficient to show that by reason of alleged mistake, in that the offer was not intended to apply to the entire lot, the minds of the parties did not meet.

**2.—Same—Possesson as Notice.**

Where, after the contract for the sale and purchase of a· town lot was ·effected by letter, the vendor wrote the vendee that he could take possession

at once, and the vendee did take possession by plowing up the lot, nailing up the outside gates in the fence around it, and opening a gateway in a cross fence between his adjoining premises and the lot, there was such possession as sufficed to put a subsequent purchaser of the lot from the common vendor upon notice of the first vendee's rights under his contract

**3.—Practice on Appeal—Parties—Remand.**

Where, in trespass to try title brought by a subsequent vendee, the judgment of the trial court in plaintiff's favor must be reversed on appeal because the defendant has shown the superior right by virtue of an executory contract to purchase, under which he has not yet paid the purchase money or received deed, and the common vendor is not a party to the suit, the cause will be remanded in order that he may be made a party, and full equity done as between him and the defendants.

Appeal from Navarro. Tried below before Hon. L. D. Cobb.

*Frost, Neblett & Blanding,* for appellant.

*McClellan & Prince,* for appellee.

RAINEY, CHIEF JUSTICE.—This is an action of trespass to try title, instituted by appellee against appellant to recover lot 9, in block 317, according to the revised map of the city of Corsicana. At the institution of the suit plaintiff sued out a writ of sequestration and seized said property, which was replevied by plaintiff, who has held it ever since.

Defendant plead not guilty, and, in substance, that he held said property by virtue of a contract of purchase from one H. P. West, plaintiff's vendor, by which the said West agreed to convey said lot to the defendant on certain conditions, naming them, which conditions defendant had offered to comply with, and is still willing and ready to comply with, and which contract the said West has refused to perform; but subsequent to the making thereof, and after defendant had taken possession of said lot, said West by deed conveyed same to appellee. Defendant also prays for rent, and that said contract of purchase be held valid and he be decreed the owner of the property. The plaintiff by supplemental petition alleged that the trade between defendant and said West was not complete, as the minds of the parties had not met, and also that he is an innocent purchaser of the lot. The case was tried before the judge without a jury and judgment rendered in favor of plaintiff Polk, from which this appeal is prosecuted.

The court found as a conclusion of fact that the minds of West and Stewart, the defendant, did not meet, hence there was no binding contract on the part of West to sell the lot to Stewart. This finding of the court is attacked by plaintiff's second assignment of error.

The facts show that in May, 1899, said West was a resident of Oklahoma Territory, Quanah, Texas, being his postoffice. Stewart lived in Corsicana. West at that time owned lot 9, in block 317, of the city of Corsicana. Some time in May, 1899, the defendant Stewart wrote to West asking him for how much and on what terms he would sell his lot back of the jail, and if he would not sell it, he would like to rent it.

Four or five days after Stewart wrote this letter he received from West,. through the mails, the following letter, viz.: "Quanah, Texas, May 24, 1899.—Mr. E. Stewart: Dear Sir.—I hold my lot back of the jail at $300—$100 cash; $100 one year, and $100 two years, interest 10 per cent per annum. H. P. West." A few days thereafter Stewart wrote to West that he would take the lot at the price and on the terms offered, and about June 9, 1899, Stewart received from West the following letter, postmarked Quanah, Texas, to wit: "June 7, 1899.—Mr. E. Stewart, Corsicana, Texas: Dear Sir.—You can take charge of the lot. The old hack you can pull over to the back of Mr. Chaney's barn. I will have Mr. H. Clay Nash, at the courthouse, to fix up the papers. The number of the lot is 9, block 317. Will have the papers fixed up as soon as I can. Red River has been up so there could be no passing. Respt., H. P. West." On June 7, 1899, West wrote to H. Clay Nash as follows: "I have sold Stewart one lot back of jail,—lot 9, block 317, new map of Corsicana, Texas. Terms of sale cash, $100 in twelve months, $100 in two years, 10 per cent from date. Write the deed to be acknowledged in Hardeman County, Texas. You need not mention Greer or Oklahoma. It is thirty-seven miles to a notary public, and we acknowledge deeds and other instruments in Quanah. We make a waranty deed. You can mention to Mr. Stewart that we have a warranty deed from Captain Dunn."

After Stewart received the letter of June 7th, he immediately took possession of the lot, plowed it, nailed up the outside gates, and opened a gateway in the cross fence between his premises and the said lot. In a few days he went to said Nash to have the papers prepared, who told him that he had received a letter from West to prepare the papers, but that he would not do so, as there was some mistake, and he would write to West about it. He did write, and after a sufficient time for West to receive the letter and a reply to reach Corsicana had elapsed, Stewart received the following letter, viz: "Quanah, Texas, June 14, 1899.— Mr. E. Stewart: Dear Sir.—Since I wrote you proposing to sell the lot adjoining you, I desire to offer for sale the other lot west of it, and I drop you .these lines to give you the refusal at the same price. I suppose you understand that these lots are 50 feet by 150 feet. Yours truly, H. P. West."

The evidence shows such a binding contract on the part of West to sell and on the part of Stewart to purchase lot 9, block 317, as entitles Stewart to an enforcement thereof unless same can be defeated by West on the ground that he made a mistake in the description, and only intended to convey the east half of said lot. West testified that he intended to sell only the east half, and to our minds the only circumstances that corroborate his testimony are that he had been holding said lot at $500, and that the .witnesses considered it of that value, and further, Nash testified that when West lived in Corsicana he spoke of it as two lots. This evidence is not sufficient in our opinion to show that at the time West wrote the letter of June 7th, to Stewart, he was making a mistake

as to what he was offering for sale when all the facts are taken into consideration. The price, $300, at which he offered the lot tends in that direction, but when we consider the situation of the lot, being near the jail, and that he had been away from Corsicana for some time and had not been able to sell, it is not by any means improbable that he was willing to dispose of it at that price.

The testimony showing that West made no mistake and that the idea of a mistake did not occur to him until after he received Nash's letter, which doubtless suggested it, is so cogent as to irresistibly lead to the conclusion that no mistake was made by him. Lot 9, block 317, as originally platted, was 100x150 feet, and had so remained as shown by the revised map of Corsicana. The deed from Dunn to West described it as 100x150 feet. West testified that he had this deed before him when he wrote the description to Stewart. It had always been rendered for taxes as one lot, and further, when West wrote to have the old hack removed from the lot the only idea of its situation must have been on the northwest corner of the lot where he left it, and where it would not have in any way interfered with Stewart's possession if the east half had only been intended to be sold. These facts being true, and they are not contradicted, it seems entirely improbable that West intended other than the sale of the entire lot 9.

The character of Stewart's possession at the time of Polk's purchase was such as to put Polk upon notice of Stewart's rights in the premises and precluded a recovery by Polk, and the court erred in rendering judgment ousting Stewart, he having tendered performance of his contract with West.

We are asked to render judgment here in favor of appellee. This we do not feel authorized to do, as West is not a party to this proceeding. While we could divest title out of Polk and vest it in Stewart, to do so would leave Stewart's part of the contract unperformed, as Polk is not entitled to judgment for the $100 and two notes tendered by Stewart to carry out his agreement. West is the only one entitled to receive these, and, in order for full equity to be done, he should be before the court.

The judgment is reversed and cause remanded.

*Reversed and remanded.*