**DE GUERIN et al. v. JACKSON. \***

No. 4162.

Court of Civil Appeals of Texas. Texarkana.

April 21, 1932.

Rehearing Denied May 5, 1932.

*Writ of error granted.

446

Saye, Smead & Saye, of Longview, Lasseter, Simpson & Spruiell, of Tyler, and W. Ernest West, of Canton, for appellants.

Warren & Warren, of Tyler, for appellee.

LEVY, J. (after stating the case as above).

The appellant M. C. De Guerin predicates error in refusing to enter judgment in his favor because (1) the agreement as respects the sale and conveyance of the land to Johnnie Jackson expressly provided that M. C. De Guerin should hold and retain the mineral rights to the land during the period of three years, and (2) the evidence established that M. C. De Guerin timely tendered and Johnnie Jackson refused a conveyance of the land with the reservation for three years of the minerals in the land, and (3) the suit was prematurely brought and cannot be maintained in specific performance. There is involved in the points made the construction of the written instrument in evidence executed on December 19, 1929. The only point of doubt is as to the meaning of the following part, namely: "I am to hold all mineral rights to same for this length of time." The appellant insists that the provision was intended, and should be given the meaning, as absolutely excepting and reserving from the sale for the period of three years of all mineral privileges or rights, exclusive of the estate in the surface, in the land. In such case, in the circumstances,

there could not be predicated a present failure of compliance by M. C. De Guerin with the terms of the agreement, for the fact was established by the evidence that a timely tender was made and refused of a deed to the estate in the surface, exclusive of the estate in the minerals. There is doubt, though, that the meaning contended for can be given to that part of the agreement when the whole agreement is duly considered. By the terms of the agreement M. C. De Guerin was "to sell" and to make "a deed to same" to Johnnie Jackson, not alone of the estate in the surface of the land exclusive of the estate in the minerals, but "the fifty acre tract of land bought of the Eliza Cole heirs." The time limit beyond which the agreement "to sell" and make "a deed" would not extend was expressly fixed, namely, "for three years." Within the period of such time limit, Johnnie Jackson was expressly required to make full payment of the consideration, and, if done then, he was entitled at once to absolute conveyance of the entire tract of land, but, in case he wanted a deed to the land before payment of the full consideration, it was allowable to him to have M. C. De Guerin execute and deliver the deed by paying as much as "the amount of $100.00 cash," and making provision for the timely payment of the balance. It is believed, from the review of the agreement, that the absolute conveyance in fee simple of the land and the minerals lying thereunder and the payment of the purchase money were intended to be concurrent acts and dependent promises. There was not intended to be a separation of the estate in the minerals from the estate in the surface, and a reservation from sale of the mineral rights for the entire three years, with a conveyance only of the surface, exclusive of the minerals, on any day within the three years' time limit that the consideration or as much as $100 may be paid. The words, as used, of "hold all mineral rights" for three years, merely fixes, as intended should be, the time limit beyond which the agreement to sell and convey the land inclusive of minerals would not go. This construction gives effect to every part and harmonizes the entire instrument. In this construction as given the instrument, Mr. De Guerin was obligated to perform its terms. The jury found, and the evidence supports the finding, that Johnnie Jackson accepted the agreement and made timely tender of the required consideration and demanded a deed. His refusal to accept a deed to the estate in the surface exclusive of and with reservation of the mineral rights was not tantamount to a refusal to accept and abide by the written agreement evidenced by the written instrument of December 19, 1929.

■ The appellant J. B. Blanchard presents the same points, based on the same assignments in the brief, as has the appellant M. C. De Guerin, and, for the same reasons given above, the points and assignments are likewise overruled. The trial court having correctly construed the instrument in evidence, his conclusion, it is thought, should be sustained, and the decree as entered, as respects the appellants De Guerin and Blanchard should be in all things affirmed, with the modification of such decree and additional terms of adjudication so far as respects the appellant M. C. De Guerin, that Johnnie Jackson do have and further recover, as prayed for, of M. C. De Guerin the sum of $37,500, the value, as found by the jury, of the lease executed by M. C. De Guerin to J. C. Falvey and J. S. Rushing on October 4, 1930.

The appellants J. C. Falvey and J. S. Rushing present the points that (1) Johnnie Jackson authorized M. C. De Guerin to execute the lease to them, and (2) Johnnie Jackson is estopped to question the validity of the lease, and (3) they are innocent purchasers for value without notice, as shown in the circumstances.

■ The verdict of the jury, upon conflicting evidence, was a finding adverse to the contention made by, and in legal effect conclusively determines, the points first mentioned.

■ As respects the third point, it was established by the evidence that the record title to the 50-acre tract reposed, as it had since February, 1930, in M. C. De Guerin on October 4, 1930, the time he executed the lease to the appellants Falvey and Rushing. The agreement of M. C. De Guerin of December 19, 1929, to convey the land to Johnnie Jackson was an unrecorded instrument. There is no pretense in the evidence that these appellants had actual notice of any claim to the land or rights therein of Johnnie Jackson. The possession of the land on the part of the appellant Johnnie Jackson is relied upon as being sufficient to serve the purpose of notice to appellants as against the legal record title in M. C. De Guerin. These circumstances of possession are without conflict. It was proven that following the execution of the agreement of December 19, 1929, Johnnie Jackson, in the view of planting a cotton crop on the land, cleaned up the hedges and underbrush on about 10 acres, reconstructed a part of the old dilapidated fence on the west side of the tract, and plowed and put into cultivation about 30 acres in cotton. He had planted and cultivated some part of the land in 1929 after his grandmother Cole died in 1928, and before the deed was made by the heirs to De Guerin. Three sides of the land were not fenced, and there was no house nor any character of improvements on the land. Johnnie Jackson and his family resided on the Mayfield farm, and his residence was located "about one quarter of a mile from

this land." The Mayfield farm is a distinct tract of land from the 50 acres in suit, although it adjoins the D. Shaw survey in which the 50 acres is located. He was living on this Mayfield farm with his family as a tenant before his grandmother died in 1928, and has continuously lived thereon since that time. Johnnie Jackson made no tender of the purchase money to M. C. De Guerin until November, 1930, after the execution of the lease on October 4, 1930. The only evidence or mark of possession of the land by Johnnie Jackson on October 4, 1930, was the bare fact of a growing cotton crop on 30 acres which he planted and raised during the year 1930. In the circumstances, was there sufficiency of acts of actual possession of the land to affect a bona fide purchaser with notice of the title or interest of Johnnie Jackson? The question must be determined as a matter of pure law, for otherwise the verdict of the jury would be decisive as a question resting in pure fact. The doctrine of constructive or implied notice effected through possession of land rests upon the theory, not of constructive possession, but of actual possession of the land. All the authorities agree that possession, in order to constitute notice, must be actual possession of the party, or his agent or tenant, consisting of acts of occupancy which are open, visible, and unequivocal, and in nature sufficient upon the observation of a subsequent purchaser to put him on inquiry as to the rights of the possessor. Blankenship v. Douglas, 26 Tex. 225, 82 Am. Dec. 608; Ramirez v. Smith, 94 Tex. 184, 59 S. W. 258; Aurelius v. Stewart (Tex. Civ. App.) 219 S. W. 863; Evans v. Foster, 79 Tex. 48, 15 S. W. 170; 2 Pomeroy Eq. Jur. (4 Ed.) § 620; 46 C. J. § 38, p. 547. It must not be equivocal or casual. Murphy v. Welder, 58 Tex. 235; Fuentes v. McDonald, 85 Tex. 132, 20 S. W. 43; Vineyard v. Brundrett, 17 Tex. Civ. App. 147, 42 S. W. 232. In the light of the doctrine it is difficult from a practical standpoint to say that the present situation, as seen by a person at the time the lease was taken, disclosed an actual possession or occupancy of the land sufficient to constitute constructive notice. There was no actual occupation of the land by anybody, and there was no visible possession or control, except as could be inferred from the bare fact of the cotton crop being on the land. The cotton crop, which was the only mark of ownership or actual possession set on the land, was consistent with the physical possession by the owner of the record title, and not compelling of observation that there was some other possessor different from the owner of the record title. A person examining the appearance on the ground would have noticed a tract of land, distinct from any other farm, unfenced on three sides, without structures and with no person residing on or by it. The only act of visible possession of the land that he could see would be the cotton patch in such state as it ordinarily appears in the fall of the year in October. It is believed that such bare fact would not be such a visible state of things as would in any wise be inconsistent with a perfect right in the grantor who executed the lease. The appellants were not under obligation to make inquiry of persons living near the land in the absence of actual notice to appellents that such persons had knowledge of facts in reference to the title. Bounds v. Little, 75 Tex. 320, 12 S. W. 1109. The cases cited of Stewart v. Polk, 26 Tex. Civ. App. 565, 64 S. W. 818, and Collum v. Sanger Bros., 98 Tex. 162, 82 S. W. 459, 83 S. W. 184, have factual elements differentiating them from the present case. In the Polk Case there was a visible occupancy and possession both present. The outside gates of the lot were nailed up and the gateway was opened up in the cross-fence between the lot and Stewart's premises on which he resided. In the Collum Case, Mrs. Collum set up corner stones and built a fence between the tracts, and, although she never lived on the land, yet her tenants occupied and were in actual possession of the same.

The judgment, as respects the appellants Falvey and Rushing, should be and is reversed and here rendered as to deny the plaintiff Johnnie Jackson a cancellation of the lease to J. S. Rushing and J. C. Falvey executed by M. C. De Guerin on October 4, 1930, but vest in J. S. Rushing and J. C. Falvey the rights provided therein by its terms and conditions to explore for gas, oil, and other minerals, and absolutely vest in Johnnie Jackson all rights therein provided of one-eighth royalties, rentals, and other emoluments, against J. S. Rushing, J. C. Falvey, M. C. De Guerin, and J. B. Blanchard.

The costs of appeal will be taxed one-half against M. C. De Guerin and J. B. Blanchard, jointly and severally, and one-half against Johnnie Jackson.

Judgment affirmed **in part, and reversed and rendered in part.**