**STRONG et al. v. STRONG et al.**
**No. 4419.**

Court of Civil Appeals of Texas. Texarkana.
Nov. 19, 1933.

Rehearing Denied Dec. 14, 1933.

McCartney & McCartney, of Brownwood, and Bramlette & Meredith and H. A. Leaverton, all of Longview, for plaintiffs in error.

Wynne & Wynne and T. B. Stinchcomb, all of Longview, J. W. Timmins and T. L. Foster, both of Dallas, Joiner Cartwright, of Beaumont, and C. A. Toler and Martin A. Row, both of Dallas, for defendants in error.

JOHNSON, Chief Justice.

This is a suit brought by plaintiffs in error, children of Nancy Strong, deceased wife of Manuel Strong, as plaintiffs, against Manuel Strong and his present wife, Minnie Strong, and the Sun Oil Company as defendants in an action in trespass to try title seeking to recover the undivided interests which plaintiffs had inherited from their mother, Nancy Strong, deceased, in 50.5 acres of land located in Gregg county. Plaintiffs specially pleaded that defendants had knowledge and notice of plaintiffs' rights in the land. Defendants Manuel Strong and wife, Minnie Strong, admitted the allegations of plaintiffs' petition and joined them in their prayer. Defendant Sun Oil Company pleaded not guilty, a general denial, and that it was an innocent purchaser for value and without notice of plaintiffs' rights.

■ The land in question was conveyed to Manuel Strong as grantee in a deed dated November 12, 1909, during the marriage of Manuel Strong and his first wife, Nancy Strong, and was their community property. Thus the legal title was placed in Manuel Strong; and Nancy Strong as his wife became the owner of the equitable title to an undivided one-half interest in the land, which upon her death in 1913 descended to her children, plaintiffs in this suit. On April 19, 1929, Manuel Strong, joined by his present wife, Minnie Strong, executed an oil and gas lease conveying to N. M. Wilson seven-eighths of the minerals in and under the land. The lease was assigned by N. M. Wilson to the Sun Oil Company. The controversy is between plaintiffs and the Sun Oil Company concerning plaintiffs' rights to an undivided one-half interest in the minerals purported to have been conveyed by the lease to Wilson and by Wilson to the Sun Oil Company; and the burden was on plaintiffs, owners of the equitable title, to prove that the Sun Oil Company, holder of the legal title, was not an innocent purchaser for value without notice, that is to say, in order to recover against Sun Oil Company, plaintiffs must show by competent and sufficient evidence one or more of the following facts: (1) That Sun Oil Company purchased with notice, either actual or constructive, of plaintiffs' rights, or (2) that it did not pay valuable consideration for the lease, or (3) that it purchased in bad faith. The case was tried to a jury.

In response to special issues submitted, the jury found: (1) That plaintiffs had failed to show that at the time N. M. Wilson bought the lease he was purchasing same for Sun Oil Company; (2) that plaintiffs had failed to show that Wilson did not pay a fair price for the lease; and (3) that plaintiffs had failed to show that Sun Oil Company did not pay a fair price for the lease. But the jury did not answer any of the issues submitted to it relative to notice and of bad faith on the part of Sun Oil Company. The court rendered judgment for the Sun Oil Company on the findings of the jury, notwithstanding their failure to answer the issues relating to notice and bad faith. Presumably this action was taken by the court upon the theory that, though the court had submitted such issues to the jury, there was no evidence in the case which would have supported an affirmative answer charging the Sun Oil Company with notice or with bad faith. Plaintiffs have brought the case to this court by writ of error, and, under assignments of error properly presented, contend: (1) That the findings of the jury to the issues answered are contrary to the evidence; and (2) that there was evidence before the jury relating to the unanswered issues showing that Sun Oil Company had notice of plaintiffs' rights, and that it purchased in bad faith; and that by reason of which evidence plaintiffs were entitled to have the issues answered by the jury, or by another jury upon a new trial. Support is found in the record for the findings of the jury in response to the issues answered by them, and the assignments of error presented in this respect are respectfully overruled. Plaintiffs assert that Sun Oil Company had notice imputed to it as a matter of law, in the absence of actual notice to it, resulting from the evidence before the jury of the existence of the following facts: (1) Joint possession and acts of ownership of the land with Manuel Strong by his son, T. B. Strong, one of the plaintiffs; (2) the common reputation and understanding in the community in which the land was located that plaintiffs claimed an interest in the land; (3) the recital in the record of an expired oil and gas lease on the land executed by Manuel Strong to A. M. Clark in March, 1919, wherein it is recited that Manuel Strong was then a "Widower."

On the proposition that notice of plaintiffs' rights in the land was imputed as a matter of law by reason of the possession and acts of ownership by one of the plaintiffs, T. B. Strong, a son of Manuel Strong, of the land at the time Wilson bought the lease from Manuel Strong and at the time Sun Oil Company purchased from Wilson, the evidence, in substance, shows: That the land has been continuously since its purchase occupied by Manuel Strong as the homestead of himself and respective wives and their children, and at the time in question, April, 1929, it was so occupied by Manuel and his wife, Minnie Strong, and seven children—five by Minnie and two (T. B. and Arzola) by Nancy. The son, T. B., was grown, but unmarried, and continued to live in the house with his father and stepmother as a member of the family, helping to cultivate the farm, "through and through," in like manner as did the other

children, except that in the years 1927 and 1928 his father set aside to T. B., separated by a turn row, a patch of three to five acres of the cotton crop, which was worked "through and through" with the other crops by the family, but of which patch T. B. was "boss" and received the cotton therefrom, sold it, and kept the proceeds as his own. In 1929 no separate patch was set aside for T. B., but he received one-fourth of all the cotton grown on the place, and none of the other crops. It is also testified that at times during the years 1927, 1928, and 1929 T. B. cut some timber on the place, from which ties were made and sold and the proceeds appropriated by T. B.; he paid Manuel for his team with which to haul the ties, but that Manuel did not direct him to cut the ties and had nothing to do with their sale.

It does not appear that Sun Oil Company or any of its agents went upon the land prior to its purchase of the lease, or that they in fact had actual notice of any of the facts referable to possession of the land, further than is reflected by an affidavit of Manuel Strong made at the time of executing the lease to Wilson, stating: "That he and his tenants are now and have been in the continuous possession and occupancy of the land for at least twenty years last passed * * * and that no adverse claims have been made to said land or any part thereof, by suit or otherwise."

■ Possession imputes constructive notice to a purchaser of land of the rights of the person·in possession, and the Sun Oil Company is charged with notice of the rights of the plaintiffs by reason of the possession of T. B. Strong of the land at the time it purchased the lease, regardless of whether or not any of its agents knew of its possession, if in fact T. B. Strong had possession, and it was that "character of possession" meant when it is stated that "possession is notice." In Hodge v. Amerman, 40 N. J. Eq. 104, 2 A. 257, 260, it is said: "If the possession * * * is of the character required by the law; * * * then notice is a legal deduction from the fact of possession, and all persons dealing with, the title to the land in his possession are chargeable with notice of his possession, whether they have actual knowledge of his possession or not."

In Mason v. Mullahey, 145 Ill. 383, 34 N. E. 36, 37, cited by plaintiffs in error, it is said: "It is true that to constitute such notice, as against a bona fide purchaser, the possession must be open, visible, and exclusive; but it may be evidenced by any acts which clearly show an appropriation of the property to the use of the person claiming the same."

In Munn v. Achey, 110 Ala. 628, 18 So. 299, 300, it is said: "Where the vendor is in the apparent possession, the subsequent purchaser, finding the title of record in the vendor, is put on no further inquiry, because the possession appears to be according to the legal title; and if, at the time, another person is also in possession, there is no presumption of title in him inconsistent with that found in the vendor."

"What makes inquiry a duty, is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell." Meehan v. Williams, 48 Pa. 238.

In the case of Johnson v. Bingham (Tex. Civ. App.) 251 S. W. 529, 536, Amanda Whitfield and her family lived in a separate house from the house in which Johnson, the holder of the legal and recorded title, lived. Johnson gave a mortgage on the land. Amanda claimed an interest in the nature of an equitable title. It was contended that Amanda's possession at the time the mortgage was given was notice to the one who took the mortgage of her rights. In holding that such possession was not that character of possession as constitutes notice, the Galveston Court of Civil Appeals said: "There is no evidence that these mortgagees had any actual notice, and the only circumstance relied on to charge them with notice is the fact that Amanda and her children were living on the place with Johnson at the time the mortgages were executed. It is clear that this was not such possession of the property by Amanda and her children as would charge a purchaser from Johnson with notice of their claim in the land. They were apparently on the land as the servants or tenants of Johnson, who also lived there, and who held the legal record title. In these circumstances their presence on the land, if it could be termed possession, must be regarded as at all times attributable and subservient to his title and possession."

In Cameron v. Romele, 53 Tex. 238: "But it cannot properly be said the appellant [purchaser] was chargeable with notice that appellee was in possession of the premises when he bought of Maher. Both appellee and Maher were in actual occupancy of them. In such case the law as regards third parties [purchaser] imputes possession to be with the title. This was on the record, and as far as it was intended should be known by the public, in Maher. At most, the possession of appellee was ambiguous and equivocal, and cannot be held to be sufficient to charge a party paying full value for the property, with knowledge that the deed to Maher was without consideration."

Paris Grocer Co. v. Burks, 101 Tex. 106, 105 S. W. 174, 175: "The authorities lay it down that the possession [to constitute notice] must be open and visible and unequivocal, meaning that it must be openly, visibly, and unequivocally that of the claimant under the unrecorded instrument."

In De Guerin v. Jackson (Tex. Civ. App.) 50 S.W.(2d) 443, 448: "All the authorities

754

agree that possession, in order to constitute notice, must be actual possession of the party, or his agent or tenant, consisting of acts of occupancy which are open, visible, and unequivocal, and in nature sufficient upon the observation of a subsequent purchaser to put him on inquiry as to the rights of the possessor."

■ So it may safely be said that the "character of possession" referred to as constituting constructive notice, with respect to the character of case we have under consideration, must consist of open, visible, and unequivocal acts of occupancy in their nature referable to exclusive dominion over the property, sufficient upon observation to put an intending purchaser on inquiry as to the rights of such possessor; and that ambiguous or equivocal possession which may appear subservient or attributable to the possession of the holder of the legal title is not sufficiently indicative of ownership to impute notice as a matter of law of the unrecorded rights of such possessor.

■ When above principles are applied to the facts in the case before us, it does not appear that the evidence of the acts of occupancy of T. B. Strong was sufficient to charge the Sun Oil Company with notice of plaintiffs' rights in the land. Manuel Strong, the holder of the legal and recorded title, was in possession of the land. As head of the family with whom T. B. was living as a member in the circumstances as the other children, Manuel Strong was at least exercising apparent dominion over the property. Such facts would raise the presumption that the acts of T. B. Strong were in subordination to the will of Manuel Strong, as a member of his family, a tenant or employee, and that all the possession was in right of and consistent with the legal and recorded title; and this legal presumption continued in the absence of evidence that Sun Oil Company had actual notice that T. B. Strong claimed some interest in the land. Derrett v. Britton, 35 Tex. Civ. App. 485, 80 S. W. 562.

■ With respect to plaintiffs in error's contention that the Sun Oil Company was charged with constructive notice of plaintiffs' rights in the land by reason of the notoriety of plaintiffs' claim in the community in which the land was located: It was testified to over the objection of defendants by plaintiffs' witnesses Willit Holt, Bob Holt, and Coleman Strong, in substance and effect, that they were residents of the community in which the land was located, that they were well acquainted with the plaintiffs and the land, and that it was commonly known in the neighborhood in which the land was located that the children of Manuel Strong and his first wife, plaintiffs in this suit, had an interest in the land. There is no evidence that

the Sun Oil Company had any knowledge of or concerning this general reputation. So the question to be ascertained is whether or not the fact that it was the common report in the neighborhood in which the land was located that plaintiffs had an interest in it would, as a matter of law, constitute constructive notice to Sun Oil Company of plaintiffs' rights in the land. It has been held that notice of repudiating the cotenancy and claiming adversely, necessary to start running of the statute of limitation by a cotenant in possession against the cotenant out of possession, may be shown by proving "such acts of unequivocal notoriety in the assertion of such adverse and hostile claim that they [cotenants out of possession] will be presumed to have notice of such adverse right." Liddell v. Gordon (Tex. Civ. App.) 270 S. W. 564, 565; Carr v. Alexander (Tex. Civ. App.) 149 S. W. 218. But we do not know of any case where such presumption of notice has been extended to one otherwise an innocent purchaser from the holder of the legal title in possession by evidence alone of the reputation in the community in which the land was located that there was an adverse equitable claim to the land. We think that to charge a purchaser with such presumptive knowledge of fact for the purpose of imputing constructive notice, without in some way contacting him with the atmosphere in which such reputation is afloat, would be placing upon him an unreasonable burden of inquiry. The more reasonable principle is stated by Judge Gaines in the case of Bounds v. Little, 75 Tex. 316, 12 S. W. 1109, 1110, as follows:

"We know of no rule of law which requires one who is about to purchase land to make inquiries of persons living near it. It is the duty of the purchaser to inquire of the party in possession by what right he holds, and hence the law affects him with notice of the claim of such possessor. But, in the absence of some information that some particular person knows of an adverse claim to the premises in dispute, there is no duty resting upon the purchaser to make inquiries of such person, although he may live in the neighborhood in which the land lies."

And in De Guerin v. Jackson, supra: "The appellants [purchasers] were not under obligation to make inquiry of persons living near the land in the absence of actual notice to appellants that such persons had knowledge of facts in reference to the title."

■ With respect to plaintiffs in error's proposition asserting constructive notice to Sun Oil Company of plaintiffs' rights in the land by the recital of the term "widower" in apposition to Manuel Strong's name in the expired oil and gas lease executed by Manuel Strong (widower) to A. M. Clark March 22, 1919, and recorded December 4, 1919, objection to its consideration appears to be well

taken by defendants in error that this lease is not in evidence, and that no assignment of error is presented in plaintiffs in error's brief to the action of the court in excluding it from evidence in the case. However, we are not of the opinion that this recital would effect notice or put Sun Oil Company on inquiry of the rights of plaintiffs. This recital in the lease is sufficient to indicate that Manuel Strong theretofore had a wife and that she was dead. But it does not indicate that he had a wife at the time he acquired the land in 1909, which is the fact in point of inquiry of which notice is sought to be charged. Gilmer's Estate v. Veatch, 102 Tex. 384, 117 S. W. 430; Griggs v. Houston Oil Co. (Tex. Com. App.) 213 S. W. 261; McBride v. Moore (Tex. Civ. App.) 37 S. W. 450; Turner v. California Co. (C. C. A.) 54 F.(2d) 552.

Plaintiffs in error further contend that the evidence was sufficient to raise the issue of bad faith, and that they were entitled to have the jury answer the questions relating thereto. The evidence which plaintiffs in error contend is sufficient to show bad faith on the part of Sun Oil Company in purchasing the lease is in substance of the testimony of Sun Oil Company's land man, to the effect: That prior to its purchase of the lease the Sun Oil Company did not send any agent to examine the land or to see who was living upon it; that Sun Oil Company had a questionnaire different from the one Wilson used when he purchased the Manuel Strong lease; that it contained many questions seeking information with reference to the land, its location, use, and ownership; that such a questionnaire was not used by the Sun Oil Company at the time it purchased the Manuel Strong lease; and that it took no further steps to ascertain whether any one had an interest in the land other than Manuel Strong or whether any one else lived upon the land, except that furnished in the affidavit of Manuel Strong; that it was unproven territory at the time, and was regarded as cheap territory, and such as an oil man figured he could take speculative chances on, and such as the Sun Oil Company did in this instance.

 Good faith is an essential element to the protection of an innocent purchaser. He cannot act in bad faith and be innocent at the same time. He may not be an innocent purchaser under facts which show that he has closed his eyes and speculated on the absence of the proper record evidence of claims not actually known to him but under the circumstances suspected by him to exist, and thus acquire a title through the aid of registration law which he has reason to believe his grantor does not have. Houston Oil Co. v. Hayden, 104 Tex. 182, 135 S. W. 1149; Downs v. Stevenson, 56 Tex. Civ. App. 211, 119 S. W. 315, 317. But this is not intended

to deprive a purchaser of the rightful protection of the registration law, and to impute to him bad faith it must be shown that he is in fact acquainted with some circumstance which would put a prudent man upon inquiry leading to a knowledge of the right or title in conflict with that which he is about to purchase. "Possession by the vendor of muniments showing the legal title in him is sufficient guaranty to the purchaser, until further inquiry is suggested by circumstances brought home to him." Mangum v. White, 16 Tex. Civ. App. 254, 41 S. W. 80. And the fact that Sun Oil Company took the speculative chance on the title to be as it was reflected by the record, in the absence of notice of any circumstances to the contrary, does not show bad faith. The purchaser must of necessity assume many risks. Pure Oil Co. v. Swindall (Tex. Com. App.) 58 S.W.(2d) 7.

We have carefully considered all the assignments made by plaintiffs in error, but are not of the opinion that any of them present error.

The case is affirmed.