### WINGFIELD v. SMITH.  (No. 8125.)*

(Court of Civil Appeals of Texas. Galveston. April 6, 1922. Rehearing Denied May 4, 1922.)

1. **Adverse possession** ⟨⟩114(1) — **Evidence held to sustain finding of adverse possession for 10 years.**

In an action in trespass to try title, evidence *held* to sustain findings of exclusive continuous adverse possession, use, and enjoyment for 10 years.

2. **Adverse possession** ⟨⟩36—**Fencing and pasturage of land with defendant's consent held not to affect defendant's exclusive possession.**

The fact that another's fence was used to inclose land, and that he had a few acres within the inclosure and pastured some cattle therein, did not affect the exclusiveness of defendant's possession, where such party testified that the cattle were pastured with defendant's consent and under his direction.

3. **Adverse possession** ⟨⟩7(3)—**Defendant held to have obtained adverse possession under limitation statute, although fencing land before it was awarded plaintiff by statute.**

Where defendant in trespass to try title had placed a fence on land while it was owned by the state, the title to the fence passed to the plaintiff with the land; but where it continued to inclose the land, and plaintiff allowed the inclosure to continue, and defendant to have exclusive use and enjoyment of the land claiming it as his own for more than 10 years after it was awarded to plaintiff by the state, such possession by defendant ripened into title.

4. **Adverse possession** ⟨⟩7(3) — **Award by state is such title as can be lost by adverse possession.**

An award by the state is such a title as will sustain an action in trespass to try title, and such title and right can be lost by adverse possession and claim.

Appeal from District Court, Anderson County; W. R. Bishop, Judge.

Action by J. W. Wingfield against W. R. Smith. Judgment in favor of defendant, and plaintiff appeals. Affirmed.

J. W. Stitt, of Fort Worth, for appellant.

Campbell & Sewell and Swift & Cotten, all of Palestine, for appellee.

PLEASANTS, C. J. This is an action of trespass to try title and for damages brought by the appellant against the appellee.

The land sued for is described in the petition as the John Reeves survey, which appellant claims under an award by the Commissioner of the General Land Office of the State of Texas made to him in the year 1905, and contains 90 acres.

The answer of the defendant disclaims as to all of the land sued for, except as to 48.17 acres thereof, which is within defendant's inclosure and is described in the answer by metes and bounds.

As to this 48.17 acres, the answer pleads title in defendant by limitation of 10 years, and asks for judgment for title and possession.

The trial in the court below without a jury resulted in a judgment in favor of appellee for the land claimed by him, and in favor of the appellant for the remainder of the tract.

The evidence shows that the 48.17 acres in controversy was fenced by appellee in 1897 and has been used and enjoyed by him continuously, under a claim of ownership, ever since it was fenced.

Appellee owns considerable land on the Veatch survey, an adjoining survey north of the Reeves. The fence built by appellee inclosing this land connects with the fence of his son-in-law, Dave Reagan, which incloses appellee's land on the Veatch. From this connection with the Reagan fence, the fence built by appellee in 1897 extends in a southerly direction across the Reeves survey to the Trinity river, which is the eastern boundary of the Reeves and Veatch surveys. This fence, together with the fence of Reagan, the fences of appellee on the Veatch survey,

---

and the Trinity river, completely incloses the land in controversy with land owned by appellee on the Veatch, and a few acres owned by Reagan. Since the construction of this fence, appellee has had exclusive possession and control of all the land within the inclosure and has used it for pasturage purposes.

There is a small field which is partly on the Veatch and partly on the Reeves surveys, and which has been in cultivation by appellee for many years.

Mr. W. R. Smith, appellee, testified in part as follows:

"I am 79 years old. I have lived in Anderson county 30 years. * * * The larger part of that land was fenced when I first came here, and cultivated by the man I bought it from, but I fenced all of it with a five-wire fence in 1897, and have been using it every year, every month, since then, and have been claiming it under my own name, and up until a year or two ago when this suit was filed, when these two suits were filed my claim and possession had not been disturbed by any one. * * *

"I have always claimed it as my own. I have used the land every year since it was fenced in 1897. The first few years I used the whole tract as a pasture until about 1907, when I fenced off about 50 acres with hog-proof fence. At that time the hogs were running at large. Some year or two after that the hogs were kept up, and I used a great deal of the old part of it, and the 50 acres. * * *

"The 50 acres was inside the pasture. * * * I held the whole tract down to this wire fence. In 1897 I put this fence here, this lower pasture fence. ∙ Prior to that time I used the whole tract as a pasture, all of this here. * * * I fenced it all at the same time, put a five-wire fence around the whole tract, and went to using this as a pasture."

The testimony of W. R. Smith was undisputed. The appellant did not introduce a single witness to disprove the limitations as testified to by the appellee and his witnesses.

Mr. Dave Reagan testified, in part:

"That fence has got five wires, sufficient to turn cattle. It is inclosed on three sides. The Trinity river is on the west side and forms a barrier. Since that land was inclosed, it has been used by Mr. Smith, or under his directions. We kept stock in there, me and Mr. Smith, and we had partnership cattle out there, that we kept in the pasture. It has been continuously used, up to the present time since 1897, and the fence has been kept up around it all the time in good shape. * * * Mr. Smith has been claiming it, and using it all the time. I have always known it as the Smith land. * * *

"I have always heard Mr. Smith refer to it as his land. I have never heard any one claiming that land from the time of the fencing of that land, in 1897, up until the institution of this suit, adverse to Mr. Smith. His possession was peaceable; nobody interfering with him. Yes, sir; there is some of the land in cultivation. * * *"

Mr. Joe Smith testified, in part:

"I have been knowing the land for about 30 years. The land involved in this suit has been under fence about 20 years. During that length of time that land has been used by my father and Mr. Dave Reagan. It has been used by my father and by people under his direction. It has been used as a pasture most of the time. There is a cultivated field on it. It has not laid idle at all during that 23 years; it has been continuously and consecutively used each and every year. It has been cultivated for 30 years or more."

Mr. C. L. Smith, another witness, testified in part to practically the same testimony as the other witnesses for appellee, but stated in part as follows:

"I have lived on that river for 30 years. I know this particular land that is involved in this suit. It has been under fence for 23 years. The fence was built there by hired help for my father. That is a good fence; it will turn stock, a five-wire fence. It has been used all the time during that 23 years, for pasture and cultivation, too. It has not missed being used any single year at all from the time it was fenced up until the filing of this suit, something like a year or two ago. My father was never disturbed or molested in his possession of the land. It was always referred to as his land."

H. Wingfield, brother of appellant, testified, in part, as follows:

"After the survey was run, my brother's line showed to run away up here. Mr. Smith and his son down there, this fence was across here. I said: 'Mr. Smith, are you claiming part of my brother's land.' He said: 'Down to this fence, that is my land.' That was the first time I had seen the land. It was an old fence. I think Mr. Smith said that fence was built 25 years ago, and it looked like it had been. The nails were covered up in the trees. He told me that he was just claiming to that fence line."

This witness was introduced by the appellant.

Under appropriate assignments of error, appellant assails the judgment of the court upon three grounds.

[1] It is first contended that the evidence is insufficient to sustain the court's finding of exclusive, continuous, adverse possession, use, and enjoyment of the land by appellee for a period of 10 years.

We think the testimony before stated fully answers this contention. Pretermitting the question of whether the possession by appellee of the portion of the land included within the field which is partly on the Veatch survey, and had been cultivated by appellee for more than 20 years, was in itself sufficient to give appellant notice of appellee's claim to any of the land outside of the field, the possession and use by appellee for pasturage purposes of the balance of the land in controversy was clearly sufficient adverse possession to give him title by limitation. Hirsch v. Patton, 49 Tex. Civ. App. 499, 108 S. W. 1015; Moran v. Moseley (Tex. Civ. App.) 164 S. W. 1094.

[2] The facts that Reagan's fence was used to inclose this land, and that he had a few acres of land within the inclosure and pastured some of his cattle therein, did not affect the exclusiveness of appellee's possession, because Reagan's testimony before set out showed that his cattle were put in the pasture with the consent and under the direction of appellee, and that the dominion, control, and possession of the pasture was at all times exclusively in appellee.

[3] It is next contended that, appellee having placed the fence on the land while it was owned by the state, he acquired no right or title in the fence, and when the land was awarded by the state to appellant the fence became his property, and its further use by appellant for inclosing the land in controversy would not give him exclusive possession of the land north of the fence, because the existence of the fence on the land would not give appellant notice that the land north of the fence was inclosed with other lands of appellee and was held and claimed by him.

It seems to us that to state this contention makes its unsoundness obvious. Of course, the title to the fence passed to appellant with the land; but it continued to inclose the land on its north side with the other land of appellee, and when appellant allowed this inclosure to continue and appellee to have the exclusive use and enjoyment of the land, claiming it as his own for more than 10 years after it was awarded to appellant by the state, such possession of appellee ripened into title. Appellant was bound to take notice of the use and possession of the land by appellee.

[4] The third contention is that appellant not having yet acquired title under his contract of purchase from the state, and the title still remaining in the state, limitation would not run to favor of appellee.

This contention cannot be sustained. It is well settled that an award by the state is such a title as will sustain an action of trespass to try title, and, this being true, such title and right can be lost by adverse possession and claim.

In the recent case of Whitaker v. McCarty (Tex. Com. App.) 221 S. W. 945, in an opinion of the Commission of Appeals, approved by the Supreme Court, it is said:

"It has been definitely established by our Supreme Court that a purchaser from the state, before the issuance of a patent, has title sufficient, through the sale and award, to maintain an action in trespass to try title, and that his title is subject to divesture through adverse possession, notwithstanding the state can not be thus barred. Dutton v. Thompson, 85 Tex. 115, 19 S. W. 1026; Thompson v. Dutton, 96 Tex. 205, 71 S. W. 544; Parker v. Brown, 80 Tex. 557, 16 S. W. 262; Patterson v. Rector, 127 S. W. 561."

Chief Justice Phillips of the Supreme Court says at the bottom of this opinion:

"We approve the judgment recommended in this case, and the holding of the Commission on the question discussed."

The authorities cited in this opinion fully sustain the conclusions there reached.

We are of opinion that none of appellant's assignments of error can be sustained, and that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.