George W. PIRTLE et al., Appellants,

v.

Mrs. Mary Jones HENRY et al., Appellees.

No. 638.

Court of Civil Appeals of Texas, Tyler.

Oct. 12, 1972.

Rehearing Denied Nov. 16, 1972.

Reeves & Reeves, Robert G. Reeves, Tyler, for appellants.

Tyner, Bain & Tyner, J. W. Tyner, Gordon C. Tyner, Tyler, for appellees.

MOORE, Justice.

This is an action in trespass to try title. Plaintiffs, George W. Pirtle, and others, brought suit in the form of an action in trespass to try title against defendants, Mrs. Mary Jones Henry, and others, to recover title and possession of a 20.65-acre tract of land in Smith County, Texas. Defendants pleaded not guilty and claimed the entire tract by virtue of Articles 5510 and 5519, Vernon's Annotated Texas Statutes, being the ten and twenty-five-year statutes of limitation. The cause was submitted to the jury on two special issues. By Special Issue No. 1, the jury was asked whether defendants established adverse possession by virtue of the ten-year statute of limitation, Article 5510, supra. By Special Issue No. 2, the court inquired as to whether defendants had established facts showing adverse possession by virtue of the twenty-five-year statute of limitation, Article 5519, supra. The jury answered both issues in favor of the defendants. On the basis of the answers made by the jury to the special issues, the trial court entered a "take nothing" judgment which, in effect, awarded the land in controversy to the defendants, appellees on this appeal. Plaintiffs, hereinafter referred to as appellants, duly perfected this appeal.

It is without dispute that appellants were the record owners of title to a large tract of land situated in Smith County, Texas, consisting of several hundred acres, including the 20.65 acres in controversy in this suit. It is also without dispute that the appellees were the record owners of a 100-acre tract of land lying adjacent to the ap-

pellants' lands. The appellees' 100-acre tract is situated on the north side of the 20.65 acres in dispute. The 20.65-acre tract and the 100-acre tract owned by appellees share a common boundary line from the southwest corner of the 100-acre tract and the northwest corner of the 20.65-acre tract extending east to the southeast corner of the 100-acre tract and the northeast corner of the tract in dispute. Appellants' land borders the 20.65-acre tract on the south and west sides. The following plat which is patterned after Plaintiffs' Exhibit No. 49 illustrates the matter in issue.

Tract bounded by points D,E,F and G is 20.65 acres in dispute.

Shaded portion is 13.14 acres described in Plaintiff's EX. #54 (surveyor's field notes).

Figure 1

[A6763]

Appellants attack the judgment by 12 points of error. The principal points relied upon by appellants involve the question of whether use and occupancy of the disputed acreage by appellees was of such nature and extent as to put appellants on notice of their adverse claim to the 20.65-acre tract and thereby cause the statute of limitation to run in appellees' favor. While appellants' points are somewhat lengthy and multifarious, it is clear that they contend first that there is no evidence to support Special Issue No. 1. Alternatively they contend the finding on Special Issue No. 1 and judgment based thereon is against the overwhelming weight and preponderance of the evidence. Appellants urge that the trial court erred in submit-

ting Special Issue No. 1 and entering judgment based thereon, because, they say, there is no evidence showing notice of adverse possession and use commenced and continued under a claim of right for a period of ten consecutive years as required by Article 5510, supra. Alternatively they say that even though the evidence be sufficient to mature title under the ten-year statute to the east 13.14 acres thereof bounded by fences as shown by points 1, 2, F and E on the above plat, the record is devoid of any evidence whatever showing adverse possession of any of the remaining portions of the 20.65-acre tract and the court erred in rendering a "take nothing" judgment against them as to all of the disputed tract.

Since the main attack on Special Issue No. 1 is that there is no evidence to support the finding that appellees held peaceable adverse possession, it is our duty to view the evidence in its most favorable light, considering only the evidence and inferences which support the finding of the trial court, and rejecting the evidence and inferences which are contrary thereto. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); Butler v. Hanson, 455 S.W.2d 942, 944 (Tex.Sup., 1970).

The record reveals that John G. Jones, appellees' ancestor, acquired the 100-acre tract by deed dated November 13, 1930, and that shortly thereafter took possession. Appellees take the position John G. Jones went into possession of the disputed 20.65-acre tract thinking that it was included in his deed. They testified they and their ancestors believed that the 100-acre tract extended south to the Elberta Switch Road. Even though they admit there was evidence of an old fence having once stood on the boundary between the two tracts, they testified they enclosed the 20.65-acre tract and used it together with the 100-acre tract. The evidence shows that sometime between 1930 and 1934, appellees repaired the old fence between points D and 1. Commencing at point 1, they built a new fence to point 2 where it connected with

an old fence extending from point 2 along the Elberta Switch Road east to point F and then north to point E thereby forming an enclosure of 13.14 acres. It is undisputed that the fence along the south and east side of the 20.65-acre tract from point 2 to point F and E was in existence when appellees purchased the 100-acre tract and that these fences were not built by the appellees. Sometime prior to 1945, a wire gate was constructed in the south fence line along the Elberta Switch Road and later replaced it with an iron gate. Attached to the gate was a sign reading "posted." The record does not, however, disclose who placed the sign there or how long it had been there. Appellees testified that they kept the gate locked; that they had maintained the fences around the 13.14 acres since 1930, replacing posts and wire whenever necessary, but that they did not maintain the old fence between the 100-acre tract and 20.65-acre tract but allowed it to stay down so that their cattle could graze on their 100-acre tract as well as the fenced portion of the 20.65-acre tract which they thought was a part of the 100-acre tract. The evidence conclusvely shows that for a period of time between 1934 to 1951 and for the period between 1957 to 1967, appellees, together with their tenants, used their 100-acre tract together with the enclosed 13.14 acres for grazing cattle; that during each of said periods of time their use was consecutive and unbroken. The record shows that they pastured from 10 to 25 head of cattle on the land and that the cattle frequently grazed on the enclosed 13.-14-acre tract because water was available. This testimony was corroborated by other witnesses not parties to the suit. Appellees also offered testimony showing that the 13.14-acre tract enclosed by the fences had been intermittently cultivated by tenants from 1930 to 1946. At some undisclosed period of time, appellees constructed and maintained a log barn on the 13.14-acre tract. Appellee, Murray Jones, testified that he cultivated a small truck farm within the enclosure each year from 1957 until 1968. He testified that his crops were pro-

tected from the cattle by field fences erected around the cultivated area. While the record does not disclose the specific area cultivated, the record shows that he did not cultivate the entire 13.14-acre tract.

■ We turn now to the evidence relating to the western portion of the 20.65-acre tract lying west and south of the fence line 1–2. The record shows that prior to the time John Jones purchased the 100 acres, there was an old fence extending from point D to G and then to point 2. The evidence shows that the area lying south and west of the new fence constructed by appellees, from point 1 to point 2, was heavily wooded and was extremely hilly. It was described by one of the witnesses as "not walkable, hardly." Another witness described it as a "mountain." The only use appellees ever made of the land west of line 1–2 was for hunting and occasionally cutting fire wood and fence posts. While there is some testimony that cattle occasionally grazed on this area, appellees did not maintain or repair the old fence between points D, G and 2. Furthermore there is no evidence that the appellees or their tenants ever used this, or any other part of the 20.65 acres, other than the 13.-14-acre enclosure for any period of ten consecutive years. As to the portion of the disputed tract lying outside the 13.14-acre enclosure, we have concluded that appellees failed to discharge their burden of proving they used, cultivated or enjoyed this portion of the disputed land for ten consecutive years as required by the statute. Consequently we agree with appellants that the "take nothing" judgment in favor of appellees as to this portion of the disputed land cannot be sustained.

But as to the 13.14 acres enclosed and used by appellees with their 100-acre tract, we are of the opinion that the record contains at least some evidence of probative force to support the judgment in favor of appellees. Appellants disagree with our conclusion, however, and argue that the evidence likewise fails to support appellees' claim of adverse possession under the ten-year statute of limitations to the 13.14-acre tract. They argue that the land within the enclosure was only casually or incidentally used with other lands owned by them and since the fences were not constructed by them or by any person under whom they claim, appellees' possession and use was not of itself of such character as to give notice of appellees' claim of exclusive adverse possession under the rule announced in Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781, 786 (Tex.Sup., 1954) and McDonnold v. Weinacht, 465 S. W.2d 136 (Tex.Sup., 1971). In *Orsborn* the Supreme Court said:

> "'* * * Our limitation statutes do not contemplate that a claimant of adverse possession can derive aid, in establishing his claim, from an inclosure casually created by third persons in effecting a different purpose of their own, and who are strangers to both the claimant of adverse possession and the true owner of the inclosed land. In such a case, the inclosure, so far as our limitation statutes are concerned, has no more effect than if same had never come into existence.'"

■ In situations where the use relied upon to support the ten-year statute is grazing, there must be at the same time a sufficient enclosure such as to give evidence that the land was designedly enclosed and to show the assertion of a claim hostile to that of the true owner. Vineyard v. Brundrett, 17 Tex.Civ.App. 147, 42 S.W. 232 (1897). Thus, notice of the claim may be accomplished where the person claiming title under the statute has "built a fence or fences enclosing the land and has maintained the enclosure and continuously used the land for grazing during the statutory period." Orsborn v. Deep Rock Oil Corp., supra.

■ The law of limitations of actions for land is founded upon notice. Rosborough v. Cook, 108 Tex. 364, 194 S.W. 131. Contrary to appellants' contention, we believe the record discloses that the east 13.-14 acres was designedly enclosed by the

adverse claimants in such a manner as to give notice to appellants that an adverse claim was being asserted at all times subsequent to 1934. Pretermitting the question of whether appellees' cultivation of a portion of the 13.14-acre enclosure was sufficient use to satisfy the requirements of the ten-year statute of limitations, we are of the opinion the possession and use by appellees for grazing purposes alone was sufficient adverse possession for ten consecutive years. Wingfield v. Smith, 241 S.W. 531 (Tex.Civ.App., 1922, ref.).

■ While appellees did not build the fence on the south and east side of the 20.-65-acre tract, the evidence shows that they did construct a new fence between points 1 and 2. This had the effect of dividing appellants' land. It also had the effect of excluding cattle of appellants which purportedly grazed on their adjoining property. Even though appellants owned the land adjacent to the fences, there is no evidence that they ever complained of the fence dividing the 20.65-acre tract or complained of the exclusion of their cattle from a part thereof. While there is nothing to show that the appellants had actual knowledge of appellees' adverse claim, we believe appellees' conduct in building a new fence; constructing a gate and keeping it locked; rebuilding and keeping up the old fences; and running 10 to 25 head of cattle within the 13.14-acre enclosure for more than ten consecutive years constituted some evidence showing an open, visible and hostile claim so as to raise the presumption that the owner had notice that his rights were being invaded intentionally and with the purpose of asserting an adverse claim to the land. See Wingfield v. Smith, supra; Houston Oil Co. of Texas v. Skeeler, 178 S.W.2d 740 (Tex.Civ.App., Amarillo, 1944, n.w.h.); Nelson v. Morris, Tex.Civ.App., 227 S.W.2d 586, ref., n.r.e. (1950). Butler v. Hanson, supra; Hoppe v. Sauter, 416 S.W.2d 912 (Tex.Civ.App., 1967, writ ref., n.r.e.). As we view the record, there is at least some evidence showing appellees designedly enclosed the 13.14-acre tract. We are of the opinion that the case of Orsborn v. Deep Rock Oil Corp., supra and the case of McDonnold v. Weinacht, supra, relied on by appellants, are distinguishable on the facts and are not controlling.

By other points of error, appellants urge that the court erred in submitting Special Issue No. 2 and erred in rendering judgment based on the jury's finding that appellees had matured title by virtue of the twenty-five-year statute of limitation. In this connection, the record shows that over the objection of appellants, appellees offered in evidence a quitclaim deed from Mrs. Emma C. Ingram, et al, to John G. Jones dated November 22, 1930, covering approximately 135 acres of land, including the land in dispute. The instrument does not purport to convey title. It merely recites the usual language showing that the grantor was making no claim to the 135 acres described therein.

Article 5519, Vernon's Annotated Statutes, reads in part as follows:

"No person who has a right of action for the recovery of real estate shall be permitted to maintain an action therefor against any person having peaceable and adverse possession of such real estate for a period of twenty-five years prior to the filing of such action, under claim of right, in good faith, under a deed or deeds, or any instrument or instruments, purporting to convey the same, which deed or deeds or instrument or instruments purporting to convey the same have been recorded in the deed records of the county in which the real estate or a part thereof is situated; * * *."

■ As we construe it, the statute clearly provides that in order for an adverse claimant to rely on the twenty-five-year statute, he must come forward with a deed or some other type of instrument which purports to convey title. The instrument relied upon by appellees does not purport to convey title, nor does the record show that any title passed to appellees by

virtue of the quitclaim. 19 Tex.Jur.2d, Deeds, sec. 11, p. 256. We therefore hold that appellees failed to discharge their burden of proof required by Article 5519, supra, and that appellees failed to establish any title by virtue of the twenty-five-year statute of limitation.

We have carefully considered all remaining points of error, including those contending that the judgment is against the overwhelming weight and preponderance of the evidence, and finding same to be without merit, they are hereby overruled.

For the reasons set forth above, we are of the opinion that the "take nothing" judgment rendered against appellants as to the entire 20.65-acre tract cannot stand. Rules 802, 803, Texas Rules of Civil Procedure.

Accordingly, the judgment is hereby reversed and remanded to the trial court with instructions to render judgment in favor of appellants for the 20.65-acre tract of land described in Plaintiffs' Original Petition, save and except the 13.14 acres enclosed by fences as described by metes and bounds description in Plaintiffs' Exhibit No. 54, to which said tract appellants shall take nothing.