George F. MIXON, Sr., Appellant,

v.

J. B. CLARK et al., Appellees.

No. 798.

Court of Civil Appeals of Texas,
Tyler.

Dec. 19, 1974.

Rehearing Denied Jan. 23, 1975.

McCulloch, Ray, Trotti & Hemphill, Ross H. Hemphill, Dallas, for appellant.

McDonald & Calhoon, Jerry L. Calhoon, Palestine, for appellees.

MOORE, Justice.

This is an action in trespass to try title. Appellant, George F. Mixon, the record owner of the title to a tract of land lying in the Caldwell Survey in Henderson County, Texas, brought suit against appellees, J. B. Clark and Henry Onetia Clark, the owners of adjacent land in the Martinez Survey seeking to recover title and possession to a 7.6-acre tract of land enclosed by appellees' fence. In the alternative appellant sought judgment establishing the true boundary between his property and that of the Clarks. Appellees answered with a plea of "not guilty" and filed a cross-action seeking to recover title to the 7.6 acres in controversy by virtue of the ten-year statute of limitations, Art. 5510, Vernon's Ann.Tex.Civ.St. Trial was had before a jury. In response to Special Issue No. 2, the jury found that the 7.6-acre strip of land in controversy was wholly within the Clarks' enclosure and that they, and those under whom they claimed, held exclusive, continuous, peaceable and adverse possession, using and enjoying the same along with other lands in their enclosure for a period of more than ten consecutive years prior to May 23, 1972, the date appellant filed suit. After overruling appellant's motion to disregard Special Issue No. 2 and his motion for judgment notwithstanding the verdict, the trial court entered judgment in favor of appellees. Appellant, George F. Mixon, perfected this appeal.

We affirm.

Appellant brings six points of error seeking a reversal on the ground that the jury's finding on Special Issue No. 2 is not supported by the evidence and alternatively, that the verdict and the judgment based thereon are against the overwhelming weight and preponderance of the evidence. In connection with the no evidence points appellant contends that there is no evidence showing that the 7.6 acres was "designedly" enclosed. He argues that the fence was merely casually or incidentally enclosed and therefore the use of the 7.6 acres in dispute solely for grazing purposes was not sufficient to constitute notice of a hostile or adverse claim. In support of this contention appellant relies on the holding in Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781 (1954).

■ In passing on appellant's "no evidence" points, it is our duty to view the evidence in a light most favorable to the finding made by the jury, considering only the evidence and inferences which support the finding and rejecting the evidence and inferences which are contrary to the findings. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); Butler v. Hanson, 455 S.W.2d 942 (Tex.Sup.1970).

■ The record shows that appellant is the record owner of a 129½-acre tract of land situated in the Caldwell Survey. It is bounded on the north by the north boundary line of the Caldwell Survey. Appellees are the record owners of a 200-acre tract of land situated in the Martinez Survey and is bounded on the south by the south boundary line of the Martinez. The north boundary line of the Caldwell and the south boundary line of the Martinez are contiguous. Thus, insofar as record title is concerned, the true boundary between the lands owned by the parties is the Caldwell-Martinez survey lines, and the jury so found in response to Special Issue No. 1. The 7.6-acre tract in dispute is situated in the Caldwell Survey and is enclosed in a fence enclosing appellees' 200-acre tract in the Martinez Survey. The strip of land in dispute is in the form of a triangle with one side being adjacent to the Caldwell-Martinez Survey lines. It runs from east to west for a distance of 2,425 feet. The east fence line of the triangular strip extends south a distance of 267 feet along

the east boundary line of the Caldwell Survey. From that point the fence meanders in a westerly direction until it comes back to the Caldwell-Martinez Survey lines. No fence has ever been constructed along the Caldwell-Martinez Survey lines fencing off the 7.6 acres as a separate tract. The evidence shows that the 200-acre tract owned by the Clarks was formally a part of a 400-acre tract in the Martinez Survey owned by a Mrs. Truitt. The fence enclosing the 7.6-acre tract in question was constructed in 1912 or 1914 as a part of the fence enclosing the 400-acre tract by Mrs. Truitt's son, R. E. Selman. He testified that he constructed the fence along a line which had been marked by hack marks and blazes on the trees in the area; that he ran the fence from tree to tree and put in a few posts; that the fence enclosing the 7.6 acres was a part of a fence system which enclosed the entire 400-acre tract owned by his mother; and that she grazed cattle on the enclosure until she sold the land to John Scarborough sometime in the 1930's. He testified that although he moved away from the Fincastle community a few years after he constructed the fence, he later moved back and lived for a time and finally moved back permanently about 10 years before the trial and that he had been generally familiar with the property all of his life. He testified that since he moved back to the community he had observed the Clarks' cattle grazing on the 7.-6-acre enclosure and knew that the Clarks had cut the timber on the land.

Mary Pearl Pagitt testified that her father, John Scarborough, purchased the 400-acre tract from Mrs. Truitt in 1933 and that she lived there with her parents from 1933 to 1937. She testified her father continuously ran cattle on the entire 400-acre enclosure until 1937; that she helped repair the fence around the 7.6 acres in controversy; that in 1937 her father sold 200 acres off the south side of the 400-acre tract to Bunk Hughes who continued to use the entire enclosure for the purpose of grazing cattle. She testified

that she moved back to the Fincastle community with her father in 1942; that since that time she had been a neighbor of the Clarks who used the entire enclosure for grazing cattle and had also cut timber on the strip in controversy.

Willie C. Dansby testified that he had lived in the Fincastle community all of his life; that between 1929 and 1937, his father leased the land from Mrs. Truitt and put new posts in the fence surrounding the 7.6 acres in controversy; that when Bunk Hughes purchased the south 200 acres of the Martinez in 1937, a fence was constructed separating the south 200 acres from the north 200 acres and that Hughes used the entire enclosure for grazing purposes until he sold to Ed Ellis; and that Ellis and his tenants used the 200-acre enclosure for farming and grazing purposes until appellees purchased the land in 1959. He testified that the Clarks grazed cattle on the enclosure after they purchased the 200-acre tract in the Martinez Survey and had cut timber on the 7.6 acres in controversy. Bill Fisher also testified that he had helped appellees cut timber on the 7.6 acres on two separate occasions.

Each of the foregoing witnesses testified that during the time they had been familiar with the land in controversy, the fence line constructed by R. E. Selman in 1912 or 1914, had always been recognized as the boundary line between the Martinez Survey and the land lying south thereof in the Caldwell. They further testified that they had never heard of anyone making claim to the 7.6 acres in dispute until appellant asserted claim shortly before suit.

Appellee, J. B. Clark, testified that immediately after purchasing his 200-acre tract on October 10, 1959, he took possession and placed eleven head of cattle thereon and had used the entire enclosure continuously for grazing purposes for more than twelve years before the present suit was filed. He testified that he periodically cut the timber on the strip of land in controversy along with timber on

the remainder of the land and had sawed it into lumber at a sawmill which he owned; that in 1969 he cut some poles off the land and sold them and in 1970 he sold the pulpwood on the 7.6 acres in controversy. He further testified that he repaired the fences in question twice a year, putting in new fence posts where necessary. He testified that although the fence enclosing the 7.6-acre tract was attached to trees in some places, it also contained 226 fence posts; that the fence had always been capable of turning cattle and that he used the 7.6 acres as his own and treated it as a part of his 200-acre tract. He further testified he claimed all the land to the fence line adjoining appellant's property and that neither appellant nor anyone else had ever made claim to any land lying north of the fence line until appellant's employees attempted to construct a fence along the Caldwell-Martinez survey lines shortly before this suit was filed.

Appellant, George F. Mixon, testified he purchased his 129½-acre tract of land in the Caldwell Survey on September 28, 1957. He testified that before he purchased the land he knew the deed records described it as 152 acres out of the 160-acre tract; that before purchasing the land he had a survey made and found it contained only 129½ acres and that he purchased it on that basis. He admitted that as a result of the survey he made an investigation and found that the 7.6 acre tract in dispute was within the Clarks' enclosure. Neither the land purchased by appellant nor any of the other land in the area was enclosed by a fence at the time appellant purchased the 129½-acre tract. Appellant testified that after he bought the property he made no use of it for approximately ten years when he started improving it by planting it in coastal bermuda grass. He admitted that he planted the grass up to and near the fence line in question in some areas. According to his testimony 7.6 acres in controversy were extremely hilly and rough, were covered with brush and timber, and were practically useless. He

testified that in late 1971 or early 1972, prior to building new fences around all of his lands, he had another survey made of his land. As a result of the survey it was again established that the fence in question was situated south of the north line of the Caldwell Survey and enclosed 7.6 acres of his land. He testified he had never seen any cattle on the 7.6 acres, but admitted that about two years prior to suit he had seen evidence that the pulpwood timber had been cut on the land. He estimated that it had been cut approximately three years before that time. He testified he made no inquiry as to who cut the timber because it actually caused him no concern. He further testified that he had always claimed to the Caldwell Survey line as his north boundary in accordance with his deed and considered the fence in question to be his fence and never had any knowledge the Clarks were claiming the 7.6 acres in dispute.

When viewed in a light most favorable to the verdict, we are of the opinion that there is at least "some evidence" to support the jury's finding of adverse possession and a claim of right by the Clarks showing a visible appropriation of all land within their fence, including the 7.6 acres in controversy for more than 10 consecutive years. Butler v. Hanson, 455 S.W.2d 942 (Tex.Sup.1970); Pirtle v. Henry, 486 S.W.2d 585 (Tex.Civ.App., Tyler, 1972, writ ref., n. r. e.); Click v. Collins, 273 S.W.2d 90 (Tex.Civ.App., 1954, writ ref., n. r. e.); Wingfield v. Smith, 241 S.W. 531 (Tex.Civ. App., 1922, ref.).

In Rosborough v. Cook, 108 Tex. 364, 194 S.W. 131 (1917), Chief Justice Phillips said: "The law of limitation of actions for land is founded upon notice. The title by limitation ripens, primarily, only because, in such manner and for such period of time as the different statutes require, notice is given of the hostile claim." The use by the one who occupies land with his instruments or animals must be so open and of such a nature as to notify the own-

er of its existence and of its hostile character so as to put the owner on inquiry as to the claim of the user. Pirtle v. Henry, supra.

■ The statute requires visible appropriation together with a hostile claim of right by the adverse claimant. However, where a party knows his land has been enclosed by another, he is bound to take notice of the use and possession of the land by the other. Wingfield v. Smith, supra.

■ It is well settled that a "casual" or "incidental" enclosure, together with "occasional" or "casual" grazing upon the enclosure will not support a claim of adverse possession. Orsborn v. Deep Rock Oil Corp., supra; McDonnold v. Weinacht, 446 S.W.2d 37 (Tex.Civ.App., El Paso, 1969) reversed 465 S.W.2d 136. On the other hand, where lands have been designedly enclosed and used continuously for grazing purposes for the statutory period, such use is sufficient notice of hostile claim to support a claim of adverse possession. Butler v. Hanson, supra; Pirtle v. Henry, supra.

■ In determining whether the fence is or is not a casual fence, we must look to the whole fencing pattern and the use made of the fence, as well as all the other facts and circumstances. Wilson v. Rogers, 343 S.W.2d 309 (Tex.Civ.App., Houston, 1961, writ ref'd., n. r. e.); Click v. Collins, supra; Butler v. Hanson, supra. As we view the record, the fence in question cannot be classified as "casual" or "incidental." The evidence shows that the fence in question was constructed by Mrs. Truitt, who was one of the parties under whom the appellees claim. R. E. Selman, her son, testified that he built the fence in 1912 or 1914. While the evidence shows that the larger tract of land in the Martinez Survey changed hands several times, the 7.6-acre tract in question continued to remain in the larger enclosure and was used by the various owners under whom the Clarks claim. The testimony shows that the fence enclosing the disputed tract was originally constructed as a part of a fencing system enclosing the 400-acre tract and was later used as a part of the fencing system enclosing the 200-acre tract now claimed by the Clarks. The previous owners, as well as the Clarks, used the entire enclosure for pasture purposes. The evidence shows that the Clarks used it for grazing purposes for more than 12 consecutive years prior to suit during all of which time appellant had actual knowledge that the 7.6-acre tract was within the Clarks' enclosure. The evidence shows without dispute that the three barbed wire fences in question had always been maintained and was capable of turning cattle. Although appellant testified that he had never seen any cattle on the disputed tract, his testimony at most was only a mitigating circumstance bearing on the issue of notice. Other witnesses testified as to having seen appellees' cattle on the area in dispute. As we view the record, the pattern of the fencing employed by the Clarks and those under whom they claim, when taken together with appellees' active and total use of the entire enclosure as a pasture, to the exclusion of all others, for more than ten consecutive years, is sufficient to give notice of a hostile claim and as such, constitutes at least some evidence of probative force in support of the verdict.

After weighing all of the evidence in the record, both that in favor of and against the jury's finding and the judgment based thereon, we cannot agree with appellant's contention that the judgment is so against the overwhelming weight and preponderance as to be clearly wrong. Appellant's fifth point is overruled.

The judgment of the trial court is affirmed.