R. E. CROWLEY, Appellant,

v.

Thomas F. LARKIN et al., Appellees.

No. 19275.

Court of Civil Appeals of Texas, Dallas.

Jan. 19, 1978.

Rehearing Denied March 2, 1978.

James G. Clement, Irving, for appellant.

F. Ward Steinbach, Dallas, for appellees.

GUITTARD, Chief Justice.

This trespass to try title suit involves a strip of land 43.7 feet wide between the land of plaintiffs Thomas F. Larkin, Jr. and others on the east and a tract owned by the defendant R. E. Crowley on the west.

Plaintiffs claim record title to the strip under a deed dated March 18, 1917, which conveyed to Thomas F. Larkin, Sr. two tracts of land aggregating 140 acres, and plaintiffs also claim title by adverse possession. Defendant Crowley answered only by a general denial. The jury's answers to special issues were favorable to plaintiffs, and defendant appeals from a judgment on this verdict, contending that there is no evidence to support the jury's finding either on the issues concerning record title or those concerning adverse possession. We affirm on the ground that the evidence supports the jury's finding of adverse possession for ten years or more under the ten-year statute of limitation, Tex.Rev.Civ. Stat. art. 5510 (Vernon 1958).

In our view, the crucial finding of fact is the jury's answer to the third special issue, which inquired whether the plaintiffs and those under whom they claim, in person or through tenants, have had peaceable and adverse possession of the land in question, cultivating, using or enjoying the same, for any period of ten years or more prior to March 12, 1974. The jury answered this issue "yes." The only attack defendant makes on this finding is that "prior to the filing of this cause, plaintiffs made no claim to the land in question sufficient to support a claim of title by adverse possession." We hold that the evidence is sufficient, at least circumstantially, to show that plaintiffs and their predecessor did openly and notoriously claim title to the disputed strip as a part of their land.

The record shows that two adjacent tracts of land, aggregating 140 acres, were conveyed to Thomas F. Larkin, Sr. by deed dated May 18, 1917. The present controversy arises from the fact that a fence along the west side of this land was not exactly on the boundary described in the deed, but was a short distance further west. The evidence tends to show, however, that the senior Larkin, and after him the plaintiffs, all of whom we shall refer to as "the Larkins," have always treated this fence line as

their west boundary. There is also evidence that until recently the owners of the land adjoining on the west likewise recognized the fence line as the boundary.

The principal witness for plaintiffs was Thomas F. Larkin, Jr. He testified that he was fifteen years old in 1917 when his father bought the land and that it was then completely enclosed by fences, including a fence along the west boundary. There is evidence that this fence was continuously maintained until some time in the 1950's, and that remnants of it were in place at the time of the trial. Larkin testified that he had the duty of maintaining the fence from the time his father first acquired the land, and that he did so for a number of years. About the year 1930 the land within the fences was leased for grazing purposes to one McCoy, and remained under lease continuously to McCoy and his son until 1952, when the Larkins began gravel removal operations on a part of their land. The McCoys maintained the fences as part of their lease obligation. The land to the west of the Larkin land was acquired by Gifford-Hill Company in 1928, and in 1938 Gifford-Hill conveyed the north ten acres of their land to Charles Bounds. In 1971 defendant Crowley acquired a narrow tract along the east side of the Bounds ten acres. He had occupied this tract for several years previously as a tenant. The strip now in dispute lies to the east of, and adjacent to, Crowley's tract.

Although Thomas F. Larkin, Jr. testified that there was a fence along the west boundary of the land purchased by his father in 1917, he was apparently mistaken with respect to the exact location of the boundary, since the land described in the deed did not actually extend as far west as the fence. The evidence shows, rather, that no fence was ever erected on the true boundary until the present controversy arose. There is also evidence from which the jury could draw the inference that for many years the only visible evidence of occupancy between the Larkin land and the land to the west was the fence line in question, and that at least until the middle 1960's, the acts of all the owners on both sides were consistent with recognition of the old fence line as the boundary. Aerial photographs, one as early as 1959, bear evidence of this occupancy line. The 1938 deed from Gifford-Hill to Bounds describes the ten acres of land conveyed as extending east from the center of Belt Line Road 781.3 feet to the northeast corner of the Gifford-Hill 33⅓ acre tract, although the distance called for in the earlier deed to Gifford-Hill was 825 feet. This discrepancy can be explained only on the hypothesis that the measurement was taken to the fence line, which, according to the evidence, was located 781.3 feet east of the center line of Belt Line Road.

This fence line, as well as the true boundary a short distance to the east, is shown on an old map used by Gifford-Hill in its gravel mining operations. A former Gifford-Hill employee testified, however, that Gifford-Hill was careful to manage its gravel operations so as not to interfere with the fence. In 1934 Gifford-Hill employed county surveyor Robert West to make a survey of the boundary. West found the old fence as it existed to the south of the disputed strip, and showed it on a map which he prepared and which is in evidence. This survey, according to West, was made for the purpose of determining the "agreed" line between the Gifford-Hill property and the Larkin property, clear of any encumbrances and conflicts. There is no evidence, however, of any express agreement between Gifford-Hill and the Larkins concerning the boundary.

There is a conflict in the evidence as to whether the fence in question was maintained throughout the period from 1930 to 1952, when the Larkin land was under lease to the McCoys. The jury apparently accepted Larkin's testimony that the fence was maintained in good repair throughout this period and that it was sufficient to hold cattle. He testified that the McCoys operated a dairy farm on the west side of Belt Line Road and brought their cows daily across Belt Line and allowed them to graze both on the Larkin land and on the Gifford-Hill land to the south and west. He testi-

fied that there was a gate in the fence that could be kept closed and that the McCoys' cows came through this gate as well as through a gate at Belt Line Road. Although it is clear that the McCoys' cows grazed on the Gifford-Hill land as well as on the Larkin land, the jury could have drawn the inference that after Gifford-Hill conveyed the ten-acre tract to Bounds in 1938, the fence in question served to keep McCoys' cows from entering the ten-acre tract from the east. Thus there is evidence that during this period the McCoys were occupying the disputed strip under lease from plaintiffs, along with the rest of the Larkin land, and that this occupancy was sufficiently open and notorious to give notice of the Larkins' claim of title.

Further evidence of the open and notorious nature of the Larkins' claim is provided by the testimony of plaintiffs witness Downs, who lived directly across the road from the north end of the strip in question. He testified that he was familiar with the location of the old fence line and that before defendant Crowley's time, his predecessor had put some junk cars on the property immediately east of the old fence line. Downs said that he complained to Larkin about these junk cars because it was community knowledge that the property was Larkins'.

Defendant argues that there is no evidence of a claim by plaintiffs to the strip in question because the record shows that the Larkins were occupying the strip by agreement with Gifford-Hill. Our review of the record, however, fails to show that the Larkins ever obtained or sought permission of Gifford-Hill or anyone else to use the disputed strip. Rather, the evidence tends to show that they continuously assumed, though mistakenly, that the land conveyed in the 1917 deed extended as far west as the fence line in question. Any evidence in the record of an "agreement" concerning the line rather tends to show that Gifford-Hill had acquiesced in this claim and treated the fence line as the boundary, although Gifford-Hill's records show that the true boundary was further east.

Neither do we think that lack of an adverse claim is shown by Larkin's testimony that he never had any disagreement with Gifford-Hill concerning the boundary. This testimony does not negate the Larkins' claim of title in view of Gifford-Hill's apparent acquiescence in the fence line as the boundary. The jury would have been justified in finding that there was no occasion for the Larkins to make any verbal claim so long as no one else was occupying or asserting any claim to the land east of the old fence line.

Acquiescence in the Larkins' claim by adjacent owners is further shown by Larkin's testimony that before this suit was filed, defendant Crowley visited him in his home in Corsicana and asked his permission to put a road along the disputed strip. According to Larkin, he did not want to "give anybody a free ride," but advised Crowley that he would be willing to lease a little property adjacent to Crowley's building on a yearly basis. Although Crowley's version of this conversation is somewhat different, Larkin's testimony indicates that at this time he was claiming title to the strip and that his claim was acknowledged by Crowley.

In short, there is evidence that the Larkins and their tenants maintained the fence in question for forty years, more or less, as the only visible demarcation between their 140-acre tract and the lands of Gifford-Hill, Bounds, and others on the west, that the McCoys as tenants of the Larkins used the land inside the fence for more than twenty years for grazing their dairy cattle, that there was general knowledge in the community of the Larkins' claim to own the property to the fence line, and that the adjacent owners acquiesced in the fence line as the boundary until shortly before the filing of this suit. We conclude that this is sufficient evidence of a claim of right to support the jury's finding of adverse possession for more than ten years. *Butler v. Hanson*, 455 S.W.2d 942, 945 (Tex.1970); *Mixon v. Clark*, 518 S.W.2d 402, 406 (Tex.Civ.App.—Tyler 1974, writ ref'd n. r. e.). In view of this

holding, we need not discuss the other contentions presented in appellant's brief.

Affirmed.

ROBERTSON, J., not sitting.